JOHN L. MOSES, Chairman, etc., v. E. J. SANFORD.

1. ESTOPPEL. *Easement.* A party who knows his land is being used to erect a pier for a bridge, and who, by his conduct or words, encourages the other party to continue to expend money and labor in such erection, or stands by seeing the work go on, only claiming damages to the value of the land so taken, is estopped from interfering with the enjoyment of the easement, and cannot be allowed to prosecute an action of ejectment based on his legal title, but will be enjoined from so doing by a court of equity.

2. SAME. *Damages.* The complainant in such a bill will be quieted in possession and enjoyment of the easement, but will be required to do equity by paying such damages as are due, to be ascertained by an account. The defendant was allowed, at his election, to submit to a decree or seek his damages by legal proceedings.

---

FROM KNOX.

---

Appeal from the Chancery Court at Knoxville. O. P. TEMPLE, Ch.

HOUK & GIBSON, W. P. WASHBURN and CALDWELL & WASHINGTON for complainants.

BAXTER & SON and HENDERSON & JOUROLMON for defendant.

FREEMAN, J., delivered the opinion of the court.

Sanford commenced an action of ejectment to recover the ground on which is located a stone pier or pillar of the bridge at the foot of Gay street over the Holston river. This bill is filed by the County

Court to enjoin that action.    Complainants go on the
idea that Sanford, who owns the land, has, by his as-
sent to the erection of the work, by acquiescence and
ratification, estopped himself from now denying their
right to the easement erected for public use.

· The facts necessary to be stated are briefly as fol-
lows:

The County Court decided that the public interest
would be subserved by building a toll bridge over the
river, and appointed commissioners to carry out that
purpose.    After procuring the consent of the corpor-
ate authorities of the city of Knoxville, they located
the bridge at the foot of Gay street.    The commis-
sioners were evidently unmindful of the fact of the
ownership of this narrow strip of land, only about
fifty feet, we believe, at this point, by defendant.
Some of them may have known it, or heard of such
ownership, before the location of the bridge, but we
think the fact was entirely overlooked, forgotten prob-
ably at the time.    Soon after the work of erecting
the pier had been commenced, defendant, on Saturday
evening perhaps, saw it going on, and on Monday
afterward met some of the commissioners and told
them they had commenced to build on his land.    After
some conversation on the subject, he expressed himself
satisfied that they would do the fair thing, as the
witnessed expressed it, as to compensation, and so the
work was suffered to proceed.    The proof is clear
that defendant never objected to the occupation of the
land, nor sought or claimed that the work should
stop at that time, nor indeed until after the pier was

about finished. In fact, his own deposition, in connection with the other facts of the transaction, makes it beyond question that he had no thought at first, or up to the time mentioned, of opposing the erection of the work and enjoyment of the easement on his land.

The only thing insisted on or claimed in this reference was fair compensation. He says, in giving the history of the transaction, that when an offer he had made in reference to the amount of compensation had been rejected by the commissioners, and no offer of any other terms made by them, that he did not take legal steps to stop the work because he did not wish to retard a public enterprise, and was led to believe that a settlement could be effected. In fact, the whole difference between the parties has grown out of a disagreement about the basis on which the compensation should be fixed. Sanford has an interest in a ferry across the river near this point. If the bridge was built the ferry will cease to be valuable, not because it will not remain intact, but because the people will prefer to cross on the bridge rather than by the ferry boat. He insisted this incidental result should be compensated for by paying the sum of $1,730. The amount of which, at ten per cent. interest, would give him $175 per annum, the rental of his interest in this ferry. The County Court did not agree with this view of the question, and hence the contest between the parties as to the amount of compensation, which has at last culminated in the present litigation. Sanford having commenced

42—VOL. 2.

an action of ejectment to recover the land, based on his assumed legal title.

Before proceeding to discuss the questions raised on the state of facts thus given, it is proper to dispose of the point presented by a demurrer filed. The second and third grounds of demurrer (the first being only a general denial of equity, not pointing out any special objection) are, that the matter was good as a defense in an ejectment suit, if at all, and the remedy was simply at law. We do not think these grounds well taken, as it is not perfectly clear that the matter would have been a good defense at law in the ejectment suit; and if it could have been used to defeat the recovery, the ample remedy in a court of equity, by which the party has the estoppel in favor of the easement established definitely by a decree of a court of record, and the other party enjoined from disturbing his quiet enjoyment of the possession, is certainly a more complete and ample remedy than could be afforded by a simple verdict for the defendant at law.

As to the objection that the County Court should have proceeded under our statutes to have the land taken under sec. 1328 and subsequent sections of the Code, we need but say that these sections fix the mode of the appropriation of the land, and as an incident to this taking or designation of the land to be taken, by sec. 1337, they are required to assess the damages and then the land is decreed to the applicant for the appropriation. But on the assumption of the bill, the occupation and appropriation is claimed to have been complete by assent, acquiescence and rat-

ification of Sanford. So that the only matter left to him is to seek himself for compensation such as he ought to claim or be entitled to. We need not discuss the question of the power of the County Court to erect bridges like this, nor the question of their power over a navigable stream. We think the power to erect bridges clearly given by the Code, secs. 1212 and 1215, as to the mode of payment by the issue of its bonds, that question cannot be raised in a case like the present. As to the stream being navigable, we need but say there is no allegation, nor is it shown, that it is a nuisance, or in any way interferes with the free use of the stream for this purpose, even if the question in favor of the public could be made at all by respondent in a case like the present. Having disposed of these preliminary questions, we return to the facts in the case on which the controversy must turn. We think it beyond question the defendant must be held estopped from disputing the right to the enjoyment of the easement by the complainant. The principle of an estoppel of this character is that the party who is to be effected by it has, by his own word or conduct, misled another into a course of action that, if the estoppel is not enforced, will work an injury to him who is thus misled. See *Decherd* v. *Blanton et al.*, 3 Sneed, 376. It is clear that Sanford, with the knowledge of the work going on, not only did not object, but intended it should go on, not being willing, as he said, to retard a public improvement. That he yielded this, is the only ground on which he could claim compensation for the ~

pation. He has claimed this as for land taken, and with this known purpose of his the County Court has continued to expend money in the erection of the pier and the bridge. He cannot now, because of disagreement as to the amount of compensation, be allowed to say the easement shall be abandoned. His remedy is clear at law for recovery of the real compensation due him. In view of this claim, which involved of necessity an acquiescence in the use of his land for the easement, the pier has been erected and he cannot now say it is his, because the parties cannot agree as to the amount of compensation to be paid. He must stand by his original claim, and legally make it good, as he may well do. We think complainant is entitled to a decree establishing the estoppel, but as equity is sought it must be done. So the complainant must submit to an account ascertaining the damages on principles established by our law in such cases, so that the defendant shall receive the value of the land. When this is paid he will receive what he is entitled to, and the equities of the parties adjusted without further litigation; or defendant can, if he prefers it, resort to his legal remedy for compensation.

A decree will be drawn in accordance with this opinion, the defendant paying all costs up to the present time.