LaRue *et al. v.* Greene County Bank.

(*Knoxville,* September Term, 1942.)

Opinion filed December 5, 1942.

Rehearing Denied January 9, 1943.

WILLIAMS, WINSTON & GUINN, of Johnson City, and MILLIGAN & HAYNES, of Greeneville, for complainants.

SUSONG, PARVIN & FRAKER, of Greeneville, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit involves the right of complainants to an easement in the north wall of the Greene County Bank building in Greeneville, Tennessee. Prior to the erection of the new structure, which cost approximately $100,000, there were two lots fronting on Main Street and immediately adjacent to and north of the original bank building. The two lots are referred to in the record as the "Trim Lot" and the "Office Lot". The "Trim Lot", upon which there was an old building, was purchased by the representatives of the Greene County Bank on April 30, 1920. The new building takes in the "Trim Lot" in its entirety, "fronting 27 feet, more or less, on Main Street and running back approximately 75 feet." The "Office Lot" had a small building upon it and was owned and used by S. B. LaRue as an office at the time the bank acquired the "Trim Lot", but there was no connection between the buildings.

The complainants in the instant case are the heirs of S. B. LaRue and can claim no rights superior to their immediate ancestor. It is the contention of the complainants that the north wall of the old building on the "Trim Lot", and which is now the north wall of the new bank building, was a party wall. They filed their bill in the Greene County Chancery Court against the defendant bank for a declaratory judgment or decree upholding their right to an easement in the new wall of the bank building.

The defendant bank filed its answer and crossbill averring that it purchased the entire "Trim Lot", including the old building, and that the vendor reserved no right of easement in said north wall; that it not only acquired the right and title to said property in fee simple by deed, but has held said property for more than seven years under color of title, and that the complainants

are estopped to assert any rights whatever therein. It is further averred that at the time of the purchase of said property Mrs. M. J. Trim, widow of J. H. Trim, was the owner of a life estate in the property, but there was a controversy as to who owned the remainder interest under the will of the said J. H. Trim.

Following the execution of the sales agreement a bill was filed in the Chancery Court to construe the will of the said Trim. It fully appears that Mrs. Trim consented to sell her life estate and that J. H. Trim at the time of his death owned the storehouse and lot in question. The said S. B. LaRue, who negotiated the agreement with the bank to sell the property, was a defendant in said proceeding. He answered and averred that the offer of the bank was advantageous for all parties in interest, that the bank had agreed to give a greater price than the market value of the property. There is nothing in the record in that case that would indicate that any of the parties in interest claimed that the north wall of the storehouse was a party wall, or that anyone had any interest other than the testator, J. H. Trim.

It was decreed by the Chancellor in this case that S. B. LaRue was the sole owner in fee of the remainder interest in the property. The title to the property was divested out of all parties to the cause and vested in the Greene County Bank in fee upon the payment of the purchase price of $15,000.

We think the record in the instant case clearly shows that S. B. LaRue was not only the owner of the remainder interest but was exercising entire supervision and control over the property in question. He was also the owner in fee of the ''Office Lot'' adjoining said property. He was a director in the Greene County Bank and had full knowledge of everything that was done in the erec-

tion of the new bank building. There is nothing in the record to show that he, as owner of the "Office Lot", ever intimated or suggested to any of the officers of the bank or fellow directors that the north wall of the old building sold to the bank, and which was the south boundary of his "Office Lot", was a party wall.

It is the contention of the bank that in neither the contract of sale by the parties in interest, nor the decree divesting and vesting title, was there a reservation to the owner of the "Office Lot" of any right of easement in the north wall of the structure on the "Trim Lot", and that such right does not arise by implication; that it acquired all the right, title and interest in every inch of the "Trim Lot" and was not bound by any reservations in any former deeds and especially that of S. G. Shields; that since S. B. LaRue is estopped to assert any claim, these complainants are likewise estopped by his conduct as well as by the decree of the Chancery Court; and, furthermore, that they hold said property by reason of adverse possession, holding it under color of title, openly, notoriously, and adversely for more than seven years. On the contrary, the complainants are contending that the said north wall was eighteen inches in width and was originally recognized as a party wall; that nine inches of it was upon the "Trim Lot" and nine inches upon the "Office Lot", and that the new wall of the bank building extends from two to four inches over the nine inches of said "Office Lot"; that the old wall was made a party wall by the deed of S. G. Shields while the owner of both lots, as well as *mesne* conveyances which describe the boundaries of the two lots as running to the center of the wall, etc., and that the defendant bank took title with notice that it was a party wall; and, furthermore,

that S. B. LaRue was not estopped by his silence to claim his right of easement in said wall.

When the cause came on to be heard by the Chancellor, he sustained the foregoing contentions of the defendant and dismissed the complainants' bill. Among other things he found "(1) That at the date of the contract of sale to the Greene County Bank, S. B. LaRue was the sole owner of the 'Trim Lot' by inheritance from his son Luke LaRue, subject alone to the life rights of the widow of J. H. Trim, deceased, and that said widow executed the contract of sale April 30, 1920; (2) that by said contract the owners of the property and the purchaser *acquired the entire store building and lot* on which it stood and no reservation was made of any part of said house and lot (italics ours); (3) that under the contract S. B. LaRue, then the owner of both the 'Office Lot' and the 'Trim Lot', contracted to sell all of the north wall of the old 'Trim store building' and the strip of land upon which it rested and that the Greene County Bank acquired such interest by purchase; (4) the Court is of opinion and further finds that no fact or facts in the record, sustained the contention of the complainants that an agreement existed between the predecessor in title of the complainants and the defendant bank that the north wall should be a party wall; that there is not sufficient proof to sustain complainants' contention that there was an implied agreement that the north wall of defendant's bank building should be a party wall; (5) that if the north wall of defendant's bank building encroaches upon the 'Office lot' two to four inches, under the record relief is denied complainants on the ground of estoppel."

The Court further found from the facts appearing in the record that the complainants are now barred from

recovery because of their neglect to prosecute within seven years any right of action they or their predecessors in title may have had by provisions of Section 8584 of the Code.

The Court of Appeals concurred substantially with the Chancellor's finding of fact, not in the chronological order as above set out, but generally, as we read the opinion. On page 6 of the opinion it is said: "We therefore concur in the findings of the Chancellor to the effect that the bank contracted to purchase and did purchase the 'Trim Lot', including the entire strip of land upon which the wall of the building rested; that there was no express or implied agreement between the representatives of the bank and Mr. LaRue that the new wall would be a party wall." The Court further found that the bank had been in actual, open, and notorious possession of the strip of land for more than seven years under registered color of title and that the claim of the complainants is barred under the statute.

An examination of the record discloses that there is sufficient evidence to warrant the above concurrent findings of fact. The complainants have assigned a number of errors, several of which may be considered together without specific reference. Assignments number 1 and 2 are as follows:

(1) The Court of Appeals erred in finding that by the contract of April 30, 1920, S. B. LaRue contracted to sell the north wall of the J. H. Trim store building and the strip of land on the "Office Lot", on which a part of the wall rested. The Court should have found (a) that the contract, if not in accord with the deed, etc., was superseded by the deed executed to the bank under decree of the Chancery Court by the Clerk & Master in the old chancery cause Number 880; and (b) that under the con-

tract and/or decree a deed that was not carried more than the south half of the said north wall herein involved; and that the Court should have held that the bank accepted and held under said decree and deed.

(2) That the Court erred in finding that the new and present wall between said lots was not a party wall. The Court should have found and held that the old wall was made a party wall by the deed of the predecessors in title of both parties, S. G. Shields, and for a consideration paid said Shields by the owners of the "Office Lot", which deed was duly registered; and that when the old wall was torn down and the new one erected by the defendant bank, the new wall became a party wall with the same reciprocal rights therein as existed in the old wall.

It must be noted that in the chancery cause Number 880 in which title was divested out of the owners and vested in the defendant Greene County Bank by deed of the Clerk & Master, that the Court looked primarily to the contract of sale between the parties in order to determine the rights and interests that were being sold and purchased. While it cannot be doubted that, under the S. G. Shields deed, the original wall between the "Office Lot" and the "Trim Lot" was a party wall, it does not follow that it must always be so. The owner LaRue, being the owner of both lots at the time the contract was executed, could divest himself of any and all interest he may have had in the north wall of the Trim building. The Chancellor, in looking to the contract and considering the intention of the parties, held in his decree approving the sale that he did that very thing. Considering that the bank had notice, by the terms of the Shields deed, that the wall at one time was regarded as a party wall, the owner, S. B. LaRue, also knew, not only by the contract itself, but from the

terms of the Clerk & Master's deed registering title, that it ceased to be a party wall. The said decree recites the property conveyed as follows:

"Fronting upon Main Street 27 feet, more or less, adjoining the Greene County Bank building," etc.

Following this is the *habendum* clause:

"To have and to hold to the said Greene County Bank and its successors in right and assigns, forever. *With all the appurtenances and hereditaments thereunto belonging,* to the Greene County Bank," etc., "as fully as I am authorized to do as Clerk & Master by said proceedings and decrees in said cause, but no further or otherwise." (Italics ours.)

The deed calling for "27 feet more or less" takes in the entire north wall of the old building. The learned Chancellor, Honorable Ben Robinson, who pronounced the foregoing decree approving the sale, must have known and did know the intention of the parties. He was concerned with the contract of sale then before him and what passed under it. It cannot be doubted that the Chancellor, as well as all parties to the cause, knew the full meaning of the language in the *habendum* clause, to-wit, "with all the appurtenances and hereditaments thereunto belonging." The north wall of the building on the "Trim Lot" "with all appurtenances" etc., was being conveyed to the bank. The word "appurtenances" has been defined:

"That which belongs to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy; . . . in common parlance and legal acceptation, something belonging to another thing as principal and passing as incident to it, *as a right of way or other easement to land."* (Italics ours.) Webster's International Dictionary.

■ That an owner of an easement may release the right to the owner of the servient estate by deed is sustained by many authorities. *La Plant* v. *Schuman,* 197 Iowa, 466, 474, 196 N. W., 280, citing cases. Also Washburn on Easements and Servitudes (4 Ed.), p. 683, and Blackstone (Book II, Chapter 7); *Cherry* v. *Brizzolara,* 89 Ark., 309, 116 S. W., 668, 21 L. R. A. (N. S.), 508.

■ The contract was not superseded by the deed, as contended for in the above assignment of error. The said deed carried into effect the terms of the sale according to the intention of the parties and conveyed the entire interest in the property purchased by the bank. But we hold that, had the learned Chancellor looked to the deed alone as determinative of the rights of the parties, he could not have escaped the conclusion that any right of easement S. B. LaRue may have had in the north wall of the building passed to the purchaser. The courts have long since abandoned technical rules in the construction of conveyances, and look to the intention of the instrument as the proper guide. The language of the instrument will be read in the light of the surrounding circumstances. *Williams* v. *Williams,* 84 Tenn. (16 Lea), 164, 167-170; *McNairy* v. *Thompson,* 33 Tenn. (1 Sneed), 141, 142-148; *Savage* v. *Bon Air Coal Co.,* 2 Tenn. Ch. App. 594-642; *Pittsburg Lumber Co.* v. *Shell,* 136 Tenn., 466, 189 S. W., 879; *Sequatchie Land Co.* v. *Coal, Coke & Land Co.,* 137 Tenn., 313, 193 S. W., 106.

The Chancellor who tried the instant case, and who passed the decree approving and ratifying the contract of sale, looked to the contract and attendant circumstances in determining the intention of the parties. He must have been impressed with the fact, as was the Court of Appeals, that Mr. S. B. LaRue, who was an active director in the Greene County Bank, never at any time

intimated to any person connected with the bank that he had an interest in the north wall of the bank building. We are impressed with the further fact that by the terms of the contract it would have been contrary to sound business sense for the bank to pay fifty per cent more for this old building than it was worth and spend approximately one hundred thousand dollars in erecting a new building without acquiring a fee simple title to the land upon which the north wall rested, as well as any right of easement in its predecessor in title.

It is insisted that LaRue received nothing for any sort of estate or easement in the "Office Lot". We cannot overlook the undisputed fact that he owned the remainder interest in the "Trim Lot" and building and the entire interest in the "Office Lot" adjoining, and that the bank paid one and a half times the value of the property in order to acquire it. That his "Office Lot" was benefited cannot be doubted. He must have known that the erection of a handsome five-story bank building would greatly enhance the value of his adjoining property.

The general rule that where one is the owner of two adjoining lots and sells one that is burdened with a servitude in favor of the one retained, the purchaser takes it subject to the easement or servitude, nothing to the contrary appearing, is not questioned; but, as we have pointed out, the grantor may by contract free the lot sold from the servitude that existed at the time of and prior to the sale. No particular form of words is necessary to that end. The intention of the parties is the determinative factor, which may be found in the contract itself and the circumstances surrounding the parties to the agreement. Since the Chancellor and Court of Appeals concurred in finding that all interests in the north wall passed to the buyer, and that there was no

agreement that the new wall erected by the bank was to be a party wall, it results that certain legal questions raised in some of the assignments of error necessarily disappear, to-wit, title by adverse possession under color of title.

It is earnestly contended that the deed of the Clerk and Master to the bank did not operate to divest the owners of an implied easement in the north wall of the building and that their right continues in the new wall erected by the bank, and that it was not necessary to the preservation of the right that there be an express reservation. While we think the question is foreclosed by the concurrent finding of fact by the Chancellor and the Court of Appeals, we are not averse to responding to the issue raised in complainants' assignment of error.

 It is insisted by able counsel for complainants that we should not follow the case of *Cherry* v. *Brizzolara, supra,* because it is not sustained by the weight of authority. We think, without undertaking to count decisions from the various jurisdictions, that there is highly respectable authority to sustain the Court in holding that "where there is a grant of land with full covenants of warranty and without express reservation of easement, there can be no reservation by implication unless the easement is strictly one of absolute necessity." Where the owner of a dominant estate disposes of it by grant, he passes to the grantee every interest necessary to its complete enjoyment, including all apparent and necessary easements. Not so, where the servient estate is disposed of, because it must be taken more strongly against the grantor. Mr. Washburn, in his work on Easements and Servitudes, Fourth Edition, on page 82, says:

"Thus in *Crossly* v. *Lightowler,* the Chancellor says: 'It appears to me an immaterial circumstance that the easement should be apparent and continuous, for *non constat* that the grantor does not intend to relinquish it unless he shows the contrary by expressly reserving it.' 'The law will not reserve anything out of the grant in favor of the grantor except in case of necessity.' "

In *Cherry* v. *Brizzolara, supra,* the Court follows a rule announced by Mr. Washburn that, unless there is an express reservation, it must appear that it was an easement absolutely necessary to the enjoyment of the dominant tenement, citing *Crosland* v. *Rogers,* 32 S. C., 130, 10 S. E., 874; *Burns* v. *Gallagher,* 62 Md., 462; *Sloat* v. *McDougal,* City Ct. of Brooklyn, 9 N. Y. S., 631. In *Paine* v. *Chandler,* 134 N. Y., 385, 32 N. E., 18, 19, 19 L. R. A., 99, the Court says:

"In this state the rule of strict necessity is applied to implied reservations."

We recognize the fact that in several jurisdictions the rule that easements by implication will not arise except in case of strict necessity, has not been followed. Our cases do not lay down the rule of "strict" or "absolute" necessity. We think as easement by implication, or implied reservation, should not arise except where it is of such necessity that it must be presumed to have been within the contemplation of the parties. In the case of *Morrison* v. *Marquardt,* 24 Iowa, 35, 92 Am. Dec., 444, it is said:

"The doctrine of implied easements rests upon the supposed intention of the parties, as deduced from the situation and condition of the two estates to which the easement relates."

See also, Thompson on Real Property, Vol. I, Sec. 409.

We do not have before us a case of two buildings supported by a common wall. There was no building upon the "Office Lot" that had any physical connection whatever with the Trim building. It does not appear from the record how long prior to the sale in question that the north wall of this building was used as a supporting wall for another structure on the "Office Lot," if indeed it was ever so used. It is quite manifest that the original party-wall, as it probably stood under the Shields deed, had been torn down. It had ceased to exist. As stated above, the north wall of the building on the "Trim Lot" was certainly not a supporting wall for any kind of structure. It was under these circumstances that the defendant bank became the owner of the Trim property.

An analogous situation to that of the instant case is found in *Heartt* v. *Kruger,* 121 N. Y., 386, 24 N. E., 841, 842, 9 L. R. A., 135, 18 Am. St. Rep., 829, wherein it was held, quoting Judge SANFORD, "that the agreement under which the party-wall had been built related to that wall only," and "that, when two owners of adjoining city lots unite in building two stores with a party-wall, we have no right to infer from that act an agreement binding upon them, and their heirs and assigns, to the end of time, to erect another like party-wall," etc. In that case one of the owners was insisting that if only the foundation, or cellar wall upon which it stood, remained he had a right of easement in the new wall erected by the adjoining owner. The Court rejected the insistence because of "changing conditions of our cities and villages," holding:

"The easement was measured in its extent and duration by the existence of the necessity for it. When the necessity ceased, as it did by the destruction of the build-

ings and wall, the rights resulting from it ceased also.''
Citing *Ogden* v. *Jennings,* 62 N. Y., 526, 531.

In *357 E. 76th Street Corp.* v. *Knickerbocker Ice Co.,*
263 N. Y., 63, 188 N. E., 158, 159, the Court refers to
and expressly supports the decision in *Heartt* v. *Kruger,*
*supra,* saying:

''The essential consideration which impels the con-
tinuance of a party wall easement over the wishes of one
of the property owners is the necessity of continued
support of an existing building and not an isolated prop-
erty right in the wall as such.''

Again the Court says:

''To say that the right of support of a building sur-
vives the building itself is paradoxical. Erecting an
entirely new building on an old party wall falls pretty
clearly into the category of convenience rather than of
necessity.'' Citing *Forstmann* v. *Joray Holding Co.,* 244
N. Y., 22, 154 N. E., 652.

In *Powell and Wife* v. *Riley,* 83 Tenn. (15 Lea), 153,
158, this Court held, upon the authority of Mr. Washburn,
that an easement by implication will arise where it is con-
tinuous and apparent and which has been used by the
owner during the unity of ownership and possession. In
*Rightsell* v. *Hale,* 90 Tenn., 556, 560, 18 S. W., 245, the
Court held, speaking through Mr. Justice LURTON, that the
doctrine of implied easements should be limited to cases
where the easement is reasonably necessary to the en-
joyment of the dominant estate. We think it is not in
conflict with our own cases, or the general rule of law
applicable to implied easements, to hold that such ease-
ment will not arise upon the sale of the servient tenement
in favor of the owner of the dominant estate, unless it is
of such reasonable necessity to the full enjoyment of the
dominant tenement as to create a clear presumption in

favor of the grantor. And this may be found in the use made of the premises prior to and at the time of the severance of the estates, whether one parcel or lot was used for the benefit of another, and, if so, to what extent, as well as the benefits enjoyed by reason of such use. It follows that the necessity must appear at the time of the sale or disposition of the servient estate, and not at some future and indefinite time when the owner of the dominant estate, or those claiming under him, may consider the need or desirability of an easement in the property.

It is further contended that the bank in erecting the new wall encroached upon the "Office Lot" from two to four inches and should be liable therefor. We think there is no principle more firmly imbedded in equity than that, where an owner stands by and sees another erect valuable structures upon his property in the belief that he is upon his own land, the owner is estopped from asserting any claim resulting from or arising out of the transaction. The said LaRue was an active director in the defendant bank. Surely he owed some duty to speak when this improvement started. While it is contended that he made complaint to the contractor and an agreement was reached that the new wall was to be a party-wall, we find that there is a concurrent finding of fact against this contention. Since S. B. LaRue did not take any steps to correct the wrong but allowed the work to. be concluded without protest, these complainants, who claim under him, are not in a position to assert any claim against the defendant.

While we have not referred specifically to other assignments of error, they have been fully considered and discussed in this opinion. We find no error in the judgment and decree of the Court of Appeals and the same is affirmed.

ON PETITION TO REHEAR.

The plaintiffs in error have petitioned for a rehearing of this cause, complaining that the Court overlooked the fact that "the suit is primarily one to have the complainants declared the owners in fee of eleven inches of land whereon stands said northern wall, and the portion of the wall standing thereon with an easement for support in the balance of the wall, and to have the wall declared a party wall with all the incidents pertaining thereto."

While there are other errors complained of, the foregoing is the real basis for a rehearing. Upon the original hearing before the Chancellor, the contract of sale for this property and the deed of conveyance were fully considered, and the Court found as a fact that the entire brick storehouse and building then known as the J. H. Trim building was conveyed to the Greene County Bank and that the conveyance included "the entire north wall and ground upon which it stood." The Court of Appeals concurred in this finding of fact. When the cause was presented to this Court upon petition for *certiorari,* it was contended that the cause was misjudged and misconceived by that court; that the Court erroneously applied the statute of limitations of seven years, "whereas there was involved the rights of easement to which the prescribed period alone applied; and in not going into the question of easement and rights of soil in party walls of the respective property owners."

This Court granted the writ of *certiorari* and considered the errors thus complained of in the petition. A careful reading of the original opinion clearly shows that the Court considered whether or not the defendant bank acquired the fee to the soil upon which the north wall rested. We held that it did under the concurrent

finding of facts by the Chancellor and Court of Appeals. Having decided this question against the contention of plaintiffs in error, we next considered and decided their rights to an easement in the new wall which the bank had erected. Our decision on this question adversely to complainants in error, we think, is supported by the weight of authority. While we may have erroneously stated that Chancellor ROBINSON tried both cases, the one wherein the will of J. H. Trim was construed, as well as the instant case, it could have no real bearing upon the issues that were decided. Notwithstanding there had been a concurrent finding of fact, the issues were again considered upon the contentions advanced in the petition for *certiorari*; it cannot therefore be said in fairness that the question complained of was overlooked by the Court.

It is next insisted that the Court overlooked the fact that there is no warranty in the instant case against encumbrance, that neither the contract nor the deed contained covenants of warranty, but both deal with the estate of J. H. Trim, deceased. While said contract and the deed of the Clerk and Master do not contain any covenants of warranty, yet it does not follow that the entire interest in the estate of J. H. Trim, owned by the LaRues, did not pass to the Greene County Bank. The Chancellor and the Court of Appeals concurrently held as a matter of fact that it did pass, which is conclusive upon this Court.

Responding to assignment No. 7, it is not important to a correct decision of the case that the Court erroneously found as a fact, or surmised, that ''the original party wall as it probably stood under the Shields deed had been torn down—it had ceased to exist—'', if in truth and in fact said wall had ceased to be a party wall,

as found by the Chancellor and the Court of Appeals. The question as to how long the north wall of the old Trim building had been standing was not a controlling or determinative fact. It cannot be denied that there was no building upon the ''Office Lot'' that had any physical connection with the Trim building.

It is further contended that the Court overlooked the testimony of P. C. Wakefield, president of the bank, to the effect that LaRue claimed to own a part of the wall. What the Court undertook to say was that at the time the bank began the erection of the new building and during the course of its construction, there was no claim by LaRue to anyone connected with the bank that there was an encroachment upon his property. We think it conclusively appears that when the work started on the new building, LaRue, who was then a director in the bank, made no claim to the officers and fellow directors that he had any right of easement in the north wall. The Chancellor and Court of Appeals considered the testimony of the witness Goddard and upon full consideration held against the contention of the plaintiffs in error.

It is again urged upon us that the doctrine of estoppel should not be applied in the instant case; that the defendant bank had notice by the Shields deed that the north wall of the J. H. Trim building was a party wall. Regardless of the recitations in said deed, we think the purchasers of the Trim building had the right to rely upon the terms of the contract, which was ratified and approved by the Chancery Court of Greene County. The Chancellor, after giving full consideration to said contract, held that LaRue sold and the bank bought the entire property, including the ground upon which the north wall was built. In other words, every interest the LaRues had in said property was contracted to be conveyed. The Chancellor and the Court of Appeals having

thus construed the terms of the contract, we hold that the complainants are estopped to claim any right of easement in the north wall of the new bank building. We cannot escape the conclusion that there has been a judicial determination by the Chancellor and the Court of Appeals that the contract evidenced an intention on the part of the original owners to divest themselves of every interest. We are now asked to hold that notwithstanding this intention of the original parties their heirs should be allowed to make a contrary claim. The soundest principles of justice and morality would deny to S. B. LaRue the right to make any such claim. The same right must be denied to those claiming under him. When parties, if living, would be estopped, their heirs and privies in estate are likewise estopped. *Royston* v. *Wear*, 40 Tenn. (3 Head), 8; *Nelson* v. *Claybrooke*, 72 Tenn. (4 Lea), 687; *Kerbough* v. *Vance*, 65 Tenn. (6 Baxt.), 110, 113; *Cooley* v. *Steele*, 39 Tenn. (2 Head), 605. There was no duty devolving upon the defendant bank to take notice of the recitation in the Shields deed that the two lots, the "Office Lot" and the "Trim Lot", were divided by party wall, when it affirmatively appeared from the contract of sale that S. B. LaRue, the owner of both lots, intended to sell his entire interest in the Trim store-building, including the north wall and the ground upon which it stood. The contract clearly, without any ambiguity, was a binding obligation and neither party could be heard to claim anything in violation of or contrary to its terms. In Bispam's Principles of Equity, (10th Ed.), 485, footnote to the text, it is said:

"But it must be remembered that registration is not sufficient notice to prevent an estoppel where the conduct which creates the estoppel is an affirmative act or word as distinguished from silence." (Citing authorities.)

Now the "affirmative act" in the instant case is the contract signed by the owners wherein they agreed to sell their entire interest, including the "party wall." The purchasers had the right to assume that they acquired such interest. The recitations in the Shields deed were not notice to the bank that the contract was not enforceable, since the LaRues owned both lots and could sell any part or all of either. Mr. Bigelow, in his work on Estoppel, discussing the doctrine, as applicable to contracts, says:

"A fact agreed or assumed to be true, as the basis of a contract, must be taken to be true specifically, until the contract itself is lawfully impeached by plaintiff or by defendant, or until some legal proceeding is taken to impeach the truth of the (supposed) fact; assuming that the contract itself is not contrary to law. In other words, supposing the contract to be lawful and binding, the party or parties (it may be one, it may be all) pledging or justly assuming the fact in question will be estopped from taking any position, to the detriment of other parties, inconsistent with the special fact, except for the purpose of reforming the language of a written contract and making it conform to the real terms of agreement." (P. 495.)

It is unnecessary that we consider the question of estoppel by silence. If there had been a deed of conveyance by the owner without any contract of sale and without covenants of warranty, it is very doubtful if the doctrine could have any application.

The petition to rehear is therefore denied.