HARRIS v. GRAY et ux.—188 S. W. (2d) 933.

Middle Section.   March 31, 1945.

Petition for Certiorari denied by Supreme Court, June 9, 1945.

Ray Stuart, of Charlotte, and B. J. Boyd, of Ashland City, for appellants.

William C. Cook, of Dickson, for appellee.

HICKERSON, J.  B. L. Harris filed this bill to set up an easement of way from his own land over the land of W. M. Gray and wife to a public road; and to enjoin defendants from interfering with complainant in the use of same.  It was alleged that the easement belonged to complainant under either of three theories: (1) by grant; (2) by prescription; or (3) by implied reservation based upon necessity.

Defendants, by answer, put in issue the material allegations of the bill.

The Chancellor sustained complainant's bill upon the theory of implied reservation, but held that complainant had not made out his case on the theory of express grant, or on the theory of prescription.  A decree was entered accordingly.

Defendants appealed.  Complainant did not.

There is only one question before this court: Did the Chancellor err in holding that complainant was entitled to a roadway over defendants' land to the public road upon the theory or principle of implied reservation based upon necessity?  The three assignments of error go to this question and will be considered together.

The Chancellor found the facts fully and completely. The evidence supports his conclusions of fact and we concur therein.  The material facts, confined to the question before us, are: Harpeth River is the boundary line between Dickson County and Cheatham County.  Dickson County lies south of the river, and Cheatham County lies

north of the river. Complainant and defendants own adjoining lands in Dickson County which are bounded on the north by Harpeth River. Complainant's land is triangular in shape and is bounded on the east and south by the land of defendants. This land of complainant is known as Stroud bottom, or the Betty Stewart tract, and has only five acres in it. Defendants own about 435 acres which is made up of two tracts, one known as the Harris tract, and the other the Green tract. Complainant's land is completely surrounded by the land of defendants and by Harpeth River. Complainant purchased this five-acre tract (Stroud bottom) in 1926 and has cultivated it since that time.

Burgess Harris, the grandfather of complainant, owned the Harris tract involved here many years ago. Subsequent to the time that Burgess Harris owned this Harris land Lloyd Harris, the father of complainant, owned it. Lloyd Harris died prior to 1910. He owned this land at the time of his death. From 1910 to 1936 complainant used and controlled the Harris land under an arrangement with his mother, the widow of Lloyd Harris.

Complainant's mother died in 1935 and complainant bought the Harris land in 1936, and owned it until 1939. He placed a mortgage on the Harris farm to get money to pay for it. In 1939 complainant sold the Harris land, subject to this mortgage, to his brother. From 1936 to 1939, complainant was the owner of the Harris land and Stroud bottom. He did not include Stroud bottom in the mortgage, nor did he convey Stroud bottom to his brother when he sold him the Harris land.

Defendants' ownership of the Harris land came through the foreclosure of the mortgage which complainant put on the Harris land when he owned it.

It is contended by complainant that he had no way to get to the Stroud bottom except the roadway over defendants' land; that this roadway had been used to reach Stroud bottom for about forty years; and that by necessary implication this easement was reserved when complainant put the mortgage on the land.

Defendants contend that complainant has another way to Stroud bottom, and that it is not absolutely necessary that complainant have the right-of-way over their land in order to reach the five-acre tract. Defendants say that, in the absence of absolute or strict necessity, complainant cannot maintain its bill to set up the right-of-way across their land under the theory of implied reservation.

To decide the main question of the lawsuit, it is necessary to determine one question of law and one question of fact.

■ The question of law is this: Must complainant show strict or absolute necessity for this right-of-way over defendants' land in order for complainant to maintain his suit to establish the right-of-way under the principle of implied reservation?

We think this question is well settled in this state. It has been before our Supreme Court in numerous cases, including the following: Bowles v. Chapman, 180 Tenn. 321, 175 S. W. (2d) 313; La Rue v. Greene County Bank, 179 Tenn. 394, 166 S. W. (2d) 1044; Rightsell v. Hale, 90 Tenn. 556, 18 S. W. 245; Powell v. Riley, 83 Tenn. 153; Brown v. Berry, 46 Tenn. 98. See also Lewisburg, Tennessee v. Emerson, 5 Tenn. App. 127; 17 Am. Jur., 959-965, Easements, secs. 48-50; 28 C. J. S., Easements, pp. 695-700, secs. 35, 36.

In support of its contention that the necessity must be strict or absolute defendants rely chiefly upon the case

of Bowles v. Chapman, supra, wherein the court quoted 17 Am. Jur., Easements, sec. 50, where it is said [180 Tenn. 321, 175 S. W. (2d) 314]: "There is abundant authority in support of the proposition that ways of necessity are ways of strict necessity as distinguished from ways of mere convenience and that the degree of necessity requisite to support such a way is absolute necessity, for which inconvenience without more does not suffice."

Although the foregoing quotation appears in the opinion of Bowles v. Chapman, supra, the court in that case did not hold that absolute or strict necessity was necessary in order to apply the rule of implied reservation. That case was decided upon the ground that complainant had failed to show the necessary unity of ownership.

The most recent case of our courts on the precise question here involved is the case of La Rue v. Greene County Bank, supra. After reviewing decisions of this state and of other jurisdictions our Supreme Court stated the rule to be, La Rue v. Greene County Bank, 179 Tenn. 394, 409, 410, 166 S. W. (2d) 1044, 1050: "We think it is not in conflict with our own cases, or the general rule of law applicable to implied easements, to hold that such easement will not arise upon the sale of the servient tenement in favor of the owner of the dominant estate, unless it is of such reasonable necessity to the full enjoyment of the dominant tenement as to create a clear presumption in favor of the grantor. And this may be found in the use made of the premises prior to and at the time of the severance of the estates, whether one parcel or lot was used for the benefit of another, and, if so, to what extent, as well as the benefits enjoyed by reason of such use. It follows that the necessity must appear at the time of the

sale or disposition of the servient estate, and not at some future and indefinite time when the owner of the dominant estate, or those claiming under him, may consider the need or desirability of an easement in the property.''

If, therefore, the facts in the instant case show that the easement sought by complainant is reasonably necessary to the enjoyment of the five-acre tract, a presumption arises that complainant intended to reserve this easement when he, as the owner of the five-acre tract and the Harris land, conveyed the Harris land and kept the five-acre tract. The rule of absolute or strict necessity does not apply in this state.

That brings us to the question of fact: To what extent or degree was it necessary for complainant to have this easement or right-of-way over the Harris land when he sold the Harris land and kept Stroud bottom?

For many years Stroud bottom was cultivated by the owners and their tenants without the necessity of going across the Harris lands. There was a ford across Harpeth River which came from the Cheatham County side of the river and ended on the Dickson County side of the river within the boundary of the five-acre tract. While this ford, known as the Betty ford, was used the owners of the Harris land traveled a short distance over the Stroud bottom in order to get to this ford. This Betty ford, however, washed out about forty years ago and a new ford was made which was located about 150 yards above the east boundary line of Stroud bottom. This new ford was known as the Lloyd Harris ford. Thereafter, it became impossible to cross Harpeth River at the Betty ford because the bank was too steep on the south side and the water was too deep at that place. After this new ford was made, which came out on the south side of the river

on the Harris land, the owner of Stroud bottom reached that tract of land by going along the south bank of Harpeth River over the Harris land a distance of about 150 yards to the east line of Stroud bottom.

Since complainant bought Stroud bottom, in 1926, he has used this road to get into it. The same road was used by his predecessor in title for about twelve years. Within the last few years this ford has washed out and become unusable and another ford has been made which is located on the Harris land about 300 yards above the east boundary line of Stroud bottom. Defendants make no question that complainant would be entitled to travel that portion of the land from the ford which was used for forty years up to the present ford. Their sole contention is that complainant does not have a right to travel the 150 yards from the Lloyd Harris ford down to Stroud bottom.

In passing on this question of fact, the Chancellor stated:

"The only possible way to get to said tract of land is over the defendants' property, unless there is some practicable way to cross Harpeth River.

"It may be fairly deduced from the proof submitted that there is no reasonable or practicable way to cross Harpeth River from said tract of land with farming machinery and equipment or with vehicles laden with farm produce. There has apparently been no way of crossing the river from said land for about forty years. The old Betty ford has long since been washed out, the banks are steep and the river too deep in that vicinity for crossing."

Applying the law to the facts, the conclusion of the Chancellor was this: "From all the facts and circumstances shown by the record in this cause, it is the con-

clusion of the Court that, when the complainant sold the Harris tract of land to his brother, (or when he executed the mortgage) an easement arose in his favor as the owner of said remaining tract known as the Stroud bottom, by reason of the fact that it was of such reasonable necessity to the full enjoyment of said Stroud bottom tract as to create a clear presumption in favor of the complainant as the owner of said remaining tract of land; that such easement was of such necessity that an implied reservation thereof must be presumed to have been within the contemplation of the parties at the time of said conveyance; and that it was the supposed intention of said parties to said conveyance, as deduced from the situation and condition of the two estates, and the use made of the premises prior to and at the time of the severance of the estate; that the complainant should have the right to travel over the tract so disposed of in order to reach the tract retained by him, and that there was an implied reservation of such easement or right.''

We were impressed with the full and careful consideration which the chancellor gave this case, and are in complete accord with the conclusions which he reached.

The assignments of error will be overruled and the decree of the chancery court affirmed with costs.

Remand for further proceedings.

Felts and Howell, JJ., concur.