DAUGHERTY *et ux. v.* TOOMEY *et ux.*

(*Knoxville,* September Term, 1948.)

(May Session, 1949.)

Opinion filed April 30, 1949.

Rehearing Denied July 9, 1949.

R. A. DAVIS, of Athens, for complainants.

FRANK K. BOYD and J. H. McSPADDEN, of Athens, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This petition for *certiorari* is filed by A. T. Daugherty and wife. They were the complainants in an ejectment suit commenced in Chancery. They were the appellants in the Court of Appeals.

As the controversy comes here it involves a strip of land eighteen inches wide with a depth of between fifteen

56

and twenty feet. This strip of land has been found by both Courts to be the property of the petitioner, Daugherty. The width and length of this strip of land is occupied by a concrete wall. This concrete wall is the east wall of petitioners' garage. It is the west wall of the garage of respondents here, Allen D. Toomey and wife. The roof of each garage on their adjoining sides is supported by this wall. This wall was erected in 1943. Petitioner filed his original bill of ejectment in 1947. Both Courts held that the petitioners were prevented by equitable estoppel from procuring a decree permitting the removal of this wall, that equitable estoppel being based upon the hereinafter stated concurrent findings of fact.

Daugherty, petitioner here, and Toomey, respondent, are the owners of adjoining residential lots facing South on a street in Athens and running back North the same distance between approximately parallel lines. The frontage of each lot is the same. Daugherty's lot is West of Toomey's lot. In the Northeast corner of Daugherty's lot is his garage. In the Northwest corner of Toomey's lot is his garage. The concrete wall in question is the West and East wall, respectively, of the respective garages and, as aforesaid, this wall is entirely upon the property of Daugherty.

Daugherty procured his lot in 1945 from a man named Delay. Toomey procured his lot in 1940 from a man named Larson. During the time that Delay and Larson owned the respective lots Larson had planted some trees and erected some concrete flower beds on what he thought to be his property. These trees were planted and these flower beds were built, however, with no intention of encroaching upon land which actually belonged to Delay.

These flower beds were located between the garage and the street in front. Delay made no objection to the planting of these trees or the erection of these flower beds. They lived there as good neighbors, and it does not appear that the question of whether the trees and flower beds were on Delay's property ever arose.

In 1943 Delay decided to build the garage in question on his lot, and started its construction. The Toomeys at that time owned the Larson property. They decided likewise to build their garage in question. The two garages located as thus planned in the Northwest and Northeast corner of each lot would have left an open space between the two garages of approximately eighteen inches. Delay foresaw this, and proposed to the Toomeys that the two of them build the concrete wall in question located where it is, his proposition being that it could be used for both garages and that the Toomeys pay part of the cost of its erection. The Toomeys agreed to this. The wall was erected, the garages were completed, gutters were attached to take the water from the roof of both garages. A substantial but unnamed portion of the expense of this wall and gutter was paid by Toomey. The Delays and the Toomeys continued to peacefully occupy their respective residences and garages with no misunderstanding until the death of Delay in 1945.

Delay's son sold his father's property to the petitioner here, Daugherty. The sale was made through a real estate agent. The shrubbery and flower beds were apparent at the time of the sale. The attention of Daugherty was called to this wall, but he made no reply. He did buy the property.

In less than two years after Daugherty bought the Delay property an unfriendly feeling came to exist be-

tween these two neighbors because of a disagreement as to the boundary line. Toomey claimed the ownership of the strip upon which the trees were planted and the flower beds built. Daugherty denied their ownership thereof. Each asserted ownership by various hostile acts. Daugherty had a survey made. It was ascertained thereby that the property line between the two properties was probably eighteen inches East of the flower beds and trees with the result that these articles, as well as the wall in question, were all upon the property of Daugherty.

Daugherty brought this ejectment suit to recover possession of the entire strip of land running from the street in front to the back of the garage in the rear. Had he been entirely successful, Daugherty would have been able to remove the wall in question to the very great detriment and damage of the garage of Toomey.

As aforesaid, the Chancellor and the Court of Appeals both found title to the strip of land in question was in Daugherty and that he was entitled to a decree awarding him the strip of land in question, except that portion upon which rested the concrete wall. As to that strip, it being eighteen inches wide and about the length of an automobile, the Chancellor and the Court of Appeals both held that Toomey, as well as Daugherty, was entitled to the enjoyment and use of this wall, notwithstanding the fact that the agreement between Delay and Toomey was in parol and was with reference to land.

Both Courts reached this conclusion upon the doctrine of equitable estoppel on the facts hereinabove stated, and upon the equitable maxim that Daugherty, though seeking equity, had not offered to do equity by paying the costs incident to the rebuilding of part of Toomey's ga-

rage if he, Daugherty, should remove the wall in question. By appropriate assignments of error this holding of the Court of Appeals affirming the decree of the Chancery Court is attacked, it being the insistence of the petitioner that to permit this holding to stand is to abrogate the statute of frauds.

While in many jurisdictions an executed contract takes the case from under the statute of frauds, that does not seem to be the rule in Tennessee where the statute is enforced according to its letter with reference to real estate. The Court has, however, upon numerous occasions avoided the letter of the statute by enforcement in cases of this character of the equitable estoppel rule.

In the case of *Heiskell* v. *Cobb*, 58 Tenn. 638, Cobb gave Heiskell oral permission to use his bank of a creek in building a dam and assisted him in doing the work and Heiskell agreed that Cobb might erect a carding machine on his land between the dam and the mill house. This dam caused the water to back up somewhat upon Cobb's land. This situation continued without complaint for three years and until the death of Cobb. Cobb's son brought suit to enjoin the maintenance of this dam, charging that it backed the water up on his property. He relied upon the statute of frauds. The Court sustained the seven year color of title statute of limitations, plead by Heiskell. It also said this:

"But his claim to relief rests upon another ground which is equally conclusive. It is fully proven not only that the new dam was built by the license of Sylvester Cobb, but that he stood by, encouraged and assisted him in expending his labor and money in making valuable and permanent improvements upon the faith of the license. This furnishes a clear case for the application

of the doctrine of equitable estoppel, which is in operation not only against Cobb himself, but his privies. Angell on Watercourses, 516 to 521." (Page 645.)

It is said by Daugherty that the holding above quoted is dictum since it was not necessary to a decision of the case. (It had been decided that the seven year statute of limitations applied.) However, the question of equitable estoppel was fairly raised. Therefore, the above decision embodied in the above quotation was not dictum. In the case of *McFarland* v. *Bush*, 94 Tenn. 538, 542, 29 S. W. 899, 900, 27 L. R. A. 662, 45 Am. St. Rep. 760, this Court, in passing upon the same insistence as here made said: "Two or more questions properly arising in a case under the pleadings and proof may be determined, even though either one would have disposed of the entire case on its merits without the other, and neither holding will be a dictum so long as it is properly raised and considered."

In *Moses* v. *Sanford*, 70 Tenn. 655, the County commenced the erection of a pier on land of Sanford and without knowledge that it belonged to him. Sanford soon discovered their activities, informed them of his ownership and said he was "satisfied they would do the fair thing" by way of compensation, and let the work go on. After the pier and bridge was completed and he failed to get the compensation which he felt he should have, he brought his ejectment suit and the Court rejected him upon this ground, 70 Tenn. page 659:

"We think it beyond question the defendant must be held estopped from disputing the right to the enjoyment of the easement by complainant. The principle of an estoppel of this character is that the party who is to be affected by it has, by his own word or conduct, misled an-

other into a course of action that, if the estoppel is not enforced, will work an injury to him who is thus misled. See *Decherd* v. *Blanton et al.*, 3 Sneed [373] 376 [35 Tenn. 373, 376]. It is clear that Sanford, with the knowledge of the work going on, not only did not object, but intended it should go on, not being willing, as he said, to retard a public improvement.''

Chancellor Cooper in *Bloomstein* v. *Clees Brothers,* 3 Tenn. Ch. 433, page 442, after discussing the question similar to the one we have here, concluded with this statement:

''And the American cases have announced two conclusions, in the matter of licenses touching realty, which commend themselves to our sense of morality and justice. * * * The second, in which all the cases concur, is that a license, coupled with an interest, under which expenditures have been made with the expectation, induced by licensor, of enjoyment, cannot be withdrawn without tendering the money expended. (Citing cases.)

''The only case we have on the subject tends in the same direction. *Caldwell* v. *Knott,* 10 Yerg. 209 [18 Tenn. 209]. And the reservation, from a literal adhesion to the Statute of Frauds, made in *Patton* v. *McClure, Mart. & Y.* 333 [8 Tenn. 333], and noticed above, is placed upon the principles of these decisions, namely, fraud and equitable estoppel.''

It is said by petitioner that these holdings are in the teeth of our statute of frauds. Perhaps this is true. However, this doctrine of equitable estoppel on an executed oral license of this character induced by conduct similar to that of the petitioner in this case for a benefit received by him has been applied by the holdings in these cases as an exception to the statute.

Petitioner relies on the case of *Nunnelly* v. *Southern Iron Co.,* 94 Tenn. 397, 29 S. W. 361, 28 L. R. A. 421. That case is hardly in point here, although it does discuss oral licenses in connection with the requirement that an easement on land be in writing. In that discussion the Court makes this statement, 94 Tenn. page 411, 29 S. W. page 365:

"But there are other cases which hold that even parol licenses without consideration are not revocable when executed, and some of these authorities go to the extent of holding that such executed licenses are assignable. All of such authorities as hold such licenses irrevocable and assignable treat them as in the nature of equitable estoppels."

In this case there was a consideration in that the Toomeys defrayed part of the expense of erecting the wall and attaching the gutters.

It is urged upon us that in any event the license is revocable in the absence of fraud or being misled. It seems reasonable to conclude that when Delay invited Toomey to join in the building of this wall and in the sharing of the cost, implicit therein was the representation that the wall would be used for the benefit of the garage on each of the properties. If, after this wall had been erected Delay had sought to tear it down over the objection of Toomey, it would have been immoral in fact, therefore, fraudulent and misleading,—misleading, in that the representation made to Toomey was that his property could use this wall.

■ ■ For the reasons just stated, the doctrine of equitable estoppel would apply here to Delay. The material fact was called to the attention of his successor in title, Daugherty. "When parties, if living, would

be estopped, their heirs and privies in estate are likewise estopped.'' *LaRue* v. *Greene County Bank,* 179 Tenn. 394, 414, 166 S. W. 2d 1044, 1051.

It follows that the Chancellor and the Court of Appeals were correct in applying the doctrine of equitable estoppel to Daugherty. Most of the authorities hereinabove referred to are those mentioned in the opinion of the Court of Appeals.

While neither of the Courts below approached the solution of the question made from the premises established by the fact that this is a party wall, the same conclusion is reached by so approaching the question.

■ The wall in question was the East end of the one garage and the West end of the other. It helped support the roof of each garage. So it was a party wall.

The fact that this wall rested entirely on land belonging to one of the adjoining owners did not destroy its character as a party wall. *Dunscomb* v. *Randolph,* 107 Tenn. 89, 98, 101, 164 S. W. 21, 89 Am. St. Rep. 915. Each owner has an easement of support by such wall which the other may not weaken or destroy. *Carroll Blake Const. Co.* v. *Boyle,* 140 Tenn. 166, 175, 203 S. W. 945.

Inasmuch as the predecessor of Daugherty suggested the location he is now estopped from asserting contrary rights to the prejudice of Toomey who paid the consideration. Appropriate here is the holding of this Court in *Deman* v. *Colberg,* 2 Shan. Cas. 18, page 22 as follows:

''Under these circumstances, when one party can be held no more responsible for the location of their partition wall than the other, and after the defendants have, at great expense, built their house in conformity with

this location, we think the plaintiff ought to be now estopped from asserting a different line, notwithstanding he may have lost two and one-half feet of his lands by claims of other parties adjoining on the other side, which appears to be the case, whether rightfully or not, we cannot decide in this case, both parties being equally responsible for the location of this wall. It will be more in accordance with justice for the plaintiff even to lose his two and one-half feet of ground, than for the defendants to suffer the greater loss which would result to them, involving, as it might, the great injury to the building. We have not found authority directly applicable to the case, but we think the general and well recognized principle on the subject governs the case."

This estoppel applies to his successor in title, Daugherty. *LaRue* v. *Greene County Bank, supra.*

Since the party wall on the land of one or both of adjoining landowners is an easement in the land, we again meet the question of the statute of frauds, except insofar as an exception is made by the above quoted holding in *Deman* v. *Colberg, supra.*

The text in 40 American Jurisprudence, page 489, Section 8, is in part as follows:

"Where a party wall has been erected and paid for pursuant to a parol agreement between the parties, equity will enforce the agreement, thereby creating an easement in the wall between the adjoining landowners. A parol contract as to a party wall which has been partly executed has been enforced in some instances upon the theory that the parties are estopped to deny the easement thereby created."

This question is annotated to some extent in 66 L.R.A. 684.

■ In this jurisdiction, under the authorities heretofore cited, the rule of equitable estoppel would at this point again intervene as an exception to the statute of frauds.

The petition for *certiorari* is denied.

ON PETITION TO REHEAR

The petition for *certiorari* filed by Daugherty and wife was denied on a previous opinion day. The memorandum opinion prepared in the case was not filed because we concurred in both the reasoning and the conclusions of the excellent opinion of the Court of Appeals, and had it in mind that perhaps that Court would see fit to publish its opinion.

An earnest petition to rehear has been filed. The insistences therein made were considered by us and are discussed and disposed of in the memorandum opinion that we did not file. Out of deference to the insistence of learned counsel, we have decided to file that memo as our response to the petition to rehear.

We have considered the authorities referred to in the petition and find nothing in those to persuade us that the conclusion stated in our memorandum opinion was not correct. However, there is a statement in one of the cases cited in the petition which might appropriately be mentioned. It is in the case of *Rogers* v. *Colville,* 145 Tenn. 650, on page 661, 238 S. W. 80, on page 83, wherein the Court in discussing the doctrine of equitable estoppel says this:

"The doctrine may be, as it has been, variously stated in its application to the particular facts, so much so that

in a sense every case must depend upon its own peculiar facts and circumstances.''

The petition to rehear must be denied.

All concur.