JERRY D. ADCOCK and wife,    )
NANCY M. ADCOCK,             )
                             )      Appeal No.
        Plaintiffs/Appellants,  )   01-A-01-9505-CH-00220
                             )
v.                           )      Davidson Chancery Court No.
                             )      91-3888-III
JAMES F. WITCHER, JR.,       )
                             )
        Defendant/Appellee.  )

FILED

Nov. 15, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CHANCERY COURT, PART THREE

AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

JIMMY P. LOCKER
105 Sycamore Street
Ashland City, TN 37015
    ATTORNEY FOR PLAINTIFFS/APPELLANTS

DARREL L. WEST
144 Second Ave., North
The Pilcher Building , Suite 300
Nashville, Tennessee 37201
    ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

This is an appeal by plaintiffs/appellants, Jerry and Nancy Adcock, from the judgment of the trial court in favor of defendant/appellee, James F. Witcher.

The diagram below, while not drawn to scale, depicts the shapes and the layout of the relevant tracts of land. Reference to this diagram will be helpful in understanding the following facts.



Prior to 1974, the Allens owned Tracts One, Two, and Three, the Witcher Tract, the Emmons Tract, and the Driveway Tract. In 1978, appellants purchased the 30 acre tract referred to as the Adcock Tract. In two separate sales, the Allens sold all of their land to the Emmons. While living on the Emmons Tract, Mr. Emmons built a log home on the Witcher Tract. Mr. Emmons also built a driveway up to the house. The driveway stretched the length of the Driveway Tract. In 1982, the Emmons conveyed the Witcher Tract and the house to the Richards. The Emmons expressly granted the Richards an ingress/egress easement over the Driveway Tract. The Emmons' real estate agent hired Rocky L. Montoya to survey the property and to carve out the five acre Witcher Tract and the Driveway Tract. After selling the property

to the Richards, the Emmons only used the driveway to the east of the creek once or twice and only to go to the house on the Witcher Tract.

In order to purchase the property, the Richards executed a deed of trust in favor of Collateral Investment Company ("Collateral").  The Richards later defaulted on their loan.  Collateral initiated foreclosure proceedings and purchased the Witcher Tract at the foreclosure sale.  The deed evidencing the sale described both the Witcher Tract and the easement over the Driveway Tract.  Later, in 1985, Collateral sold the Witcher Tract with its easement to appellee.  The deed evidencing the sale expressly granted appellee an easement over the Driveway Tract.  At the time appellee purchased the property, the house had been vacant for approximately two years.  Appellee worked extensively on improving the home, the yard, and the Driveway Tract.

In 1983, the Emmons executed a deed of trust in favor of Commerce Union Bank ("the Bank").  The deed of trust covered all of the Emmons property except the Emmons Tract and that portion of the Driveway Tract lying to the west of the Little Marrowbone Creek.  Like the Richards, the Emmons defaulted on their loan.  The Bank purchased the property at a foreclosure sale.  The Bank divided the property into Tracts One, Two, and Three.  At an auction in 1984, the Bank sold Tracts One and Two to appellants and Track Three to Curtis Flansburg.  The contracts for sale each contained the following language:  "Subject to easement for ingress and egress of record . . . ."  The contracts did not include an agreement to grant the purchaser an easement or a statement that the property included an easement.  In addition, appellants' deeds stated that the land was "subject to the rights of others to ingress and egress easement from Little Marrowbone

3

Road of record . . . ." Appellants, however, claimed that the Bank assured them that they had the right to use the driveway to access Tracts One and Two. Later, in 1987, the Bank sold its interest in the Driveway Tract to Flansburg. Finally, in 1991, appellee purchased Tract Three and Flansburg's portion of the Driveway Tract.

In December 1990, Timothy and Sherry Adcock, appellant's son and daughter-in-law, moved a mobile home onto the southwestern corner of Tract Two. At trial, Jerry Adcock testified that he only used the Driveway Tract once or twice a year prior to December 1990. In addition, he stated that, although he did not use Tract Two that often, when he did go onto the land he accessed it through the Adcock Tract.

In order to get to his home, Timothy Adcock filled in a portion of a drainage ditch dug by Appellee. As a result, a portion of appellee's driveway washed away. Appellee also claimed that Timothy and Sherry Adcock's presence caused other damage. Appellee verbally barred the Adcocks from using the driveway. Despite appellee's notice, the Adcocks continued to use the driveway claiming that Commerce Union Bank had granted them an easement.

On 2 December 1991, appellants filed a complaint against appellee and his wife. Appellants asked the court to enter a decree stating that they had an easement over the Driveway Tract and to award them damages. Appellee filed a complaint against appellants and Timothy and Sherry Adcock on 23 December 1991. The complaint asked the court to issue an injunction against appellants and to award appellee damages. On 9 March 1992, appellants and Timothy and Sherry Adcock filed their answer, and Timothy and Sherry Adcock filed a cross-complaint seeking

4

damages. The chancery court issued an order on 19 April 1993 transferring the cases for consolidation. The chancellor dismissed Mrs. Witcher from the case because another court had granted the couple a divorce. The chancery court heard the case without the intervention of a jury and issued a memorandum opinion on 2 February 1995. The chancellor held that appellants failed to establish that they had a right to use the driveway. In support of this conclusion, the court found that the deed to Tract Two did not expressly grant appellants an easement. Also, the chancellor held that there was no use of the driveway to access Tract Two at the time of the conveyance and that the easement was not necessary to the beneficial enjoyment of Tract Two. Because both of these factors are essential to the creation of an easement by implication, the chancellor held that there was no easement. Finally, the court denied both parties request for damages. On 16 February 1995, the chancellor entered a final judgment permanently enjoining appellants from using the driveway. From this judgment, appellants filed their notice of appeal on 7 March 1995.

Appellants present one issue, whether the trial court erred in finding that they do not have an easement over the Driveway Tract. Appellants base their argument on three theories: 1) express grant of easement; 2) easement by implication; and 3) easement by estoppel. We will address each theory in the order listed.

**Express Grant of an Easement**

A party may create an easement by express grant. In order to do so, however, the grant "must contain all the formal requisites of a grant of land. . . ." 10 **Tenn. Jur.** *Easements*

§3 (1994); *see also* 25 **Am. Jur. 2d** *Easements and Licenses* §20 (1966). Words of grant are necessary to create an express easement, and the instrument conveying the interest must contain a description of the servient estate. *Nunnelly v. Southern Iron Co.*, 94 Tenn. 397, 410-14, 29 S.W. 361, 365-66 (1895); *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. App. 1983). Further, an "enforceable permanent easement may not be conferred orally. . . ." *City of Whitwell v. White*, 529 S.W.2d 228, 230 (Tenn. App. 1974).

The facts of this case include a long list of conveyances, but only four of them convey an interest in an easement. The first conveyance was between the Allens and the Emmons in 1974. As evidenced by the installment deed, the Allens conveyed Tracts One, Two, and Three, the Witcher Tract, and that portion of the Driveway Tract lying east of the creek to the Emmons. The Allens retained the Emmons Tract. At this point in time, there was a driveway located on the Emmons Tract. This driveway extended from the road approximately three-fourths of the way back to the creek. The Allens granted the Emmons an easement interest in this driveway.

In 1975, the Allens transferred the Emmons Tract with the driveway to the Emmons. As a result, the rule of merger by unity of title came into play. The rule is stated as follows: "'When the owner of an estate enjoys an easement over another estate and acquires title to the latter, the easement is thereby extinguished.'" *Vanderbilt University v. Williams*, 152 Tenn. 664, 673, 180 S.W. 689, 691 (1925) (citing 19 C.J. *Merger by Unity of Title* p. 945). In this case, the Allens granted the Emmons an easement over the driveway portion of the Emmons Tract in 1974. The Emmons then acquired title to the Emmons Tract.

6

Thus, the rule of merger extinguished their easement interest.

Given the above, as of 1975, no one had an easement interest in the Driveway Tract. This state of the land lasted for 7 years. In 1982, the Emmons conveyed the Witcher Tract to the Richards. Under the terms of the deed, the Emmons expressly granted the Richards an easement over the Driveway Tract. The deed contained words of grant and described the land including the easement by metes and bounds. The third conveyance occurred in 1984. In that year, Collateral purchased the Witcher Tract at a foreclosure sale. The trustee's deed properly granted Collateral an easement. Then, in 1985, appellee purchased the Witcher Tract. The deed granted appellee an easement and described it appropriately.

It is apparent that no one ever granted appellants an express easement over the Driveway Tract. Further, after the Emmons' easement was extinguished, no party ever granted appellants' predecessors in title an easement over the Driveway Tract. Also, the deed to Tract Two, evidencing the conveyance to appellants, specifically stated that the land was "subject to rights of others to ingress and egress easement from Little Marrowbone Road. . . . " Finally, in order to grant a party an easement, the grantor must have some interest in the servient estate. In this case the Bank, Adcock's purported grantor, only had an interest in that portion of the Driveway Tract lying to the east of the creek. Therefore, the Bank could not have granted appellants an easement stretching the entire length of the Driveway Tract. Clearly, appellants have no right to an easement based upon the theory of express grant.

**Easement by Implication**

7

The reasoning behind implied easements is that a grantor intends to include in a conveyance whatever is necessary for the beneficial use and enjoyment of the property conveyed. 25 **Am. Jur. 2d** §24 *Easements and Licenses* (1966); *see La Rue v. Greene County Bank*, 179 Tenn. 394, 407, 166 S.W.2d 1044, 1049 (1942). Implied easements, however, are not favored in the law, and it is the policy of the courts to restrict the doctrine. In order to establish an easement by implication, the party asserting the right has the burden of proving all of the necessary elements.

The first element is unity of title to both the dominant and servient estates. Such unity must exist when the grantor conveys the dominant estate to the party claiming an easement. *Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976); *Line v. Miller*, 43 Tenn. App. 349, 352, 309 S.W.2d 376, 377 (1957). Also, there must be use of the purported easement prior to the separation which is continuous and obvious. *Allison v. Allison*, 29 Tenn. App. 99, 104-05, 193 S.W.2d 476, 478 (1945). In *Jones v. Whitaker*, 112 Tenn. App. 551 (1930), the court explained this requirement as follows:

> "The authorities are agreed and such is the rule in [Tennessee] that when the owner of an entire tract of land of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continues and apparent quasi easement exists, such easement being necessary to the reasonable enjoyment of the property granted will pass to the grantee by implication. . . ."

*Jones*, 12 Tenn. App. at 554 (citing *Powers v. Ward*, 200 Ky., 478, 34 A.L.R., 230). As is apparent from the above quote, the third element is that the easement be reasonably necessary to the dominant estate at the time of the conveyance. *See La Rue*, 166 S.W.2d at 1050. The Tennessee Supreme Court held that it does not have to be a strict or absolute necessity. Instead, the

8

court stated that the an implied easement "should not arise except where it is of such a necessity that it must be presumed to have been within the contemplation of the parties." *Id.*

The facts of this case fail to satisfy the requirements of all three elements. First, when the Bank conveyed Tract Two, the purported dominant estate, to appellants, the Bank did not have title to the entire servient estate, the Driveway Tract. Instead, the Bank only had title to Tract Two and that portion of the Driveway Tract lying to the east of the creek. Because the Bank did not have title to the dominant estate and the entire servient estate at the time it conveyed the dominant estate to appellants, unity of title, element one, did not exist.

Next, there was never a continuous and obvious use of the driveway to access Tract Two. Neither the bank nor any of the other landowners ever used the driveway to access Tract Two. The evidence in the record shows that previous owners only used the driveway to access the Witcher Tract and the Emmons Tract. Further, as the trial court found, prior to appellants ownership of Tract Two, there was never a mobile home located on the property. Therefore, no one could have used the driveway to access the home.

Finally, the trial court held that appellants failed to prove that the driveway was reasonably necessary to the enjoyment of Tract Two. We agree with the holding of the trial court. Appellants have access to Tract Two through the Adcock Tract and Tract One. There is no necessity present. In fact, the only factor present is mere inconvenience which does not rise to the level of reasonable necessity.

**Easement by Estoppel**

9

In order to prevail on an estoppel theory, the party asserting a right to an easement must establish the following: 1) the owner of the servient estate made some misrepresentation or failed to speak to the party; 2) the party must have believed the communication; and 3) the party must have relied on the communication. *Charton v. Burgess*, 1989 WL 105655, at *3 (Tenn. App. 13 September 1989); *Donegan v. Bryson*, 1987 WL 18464 at, *2-*3 (Tenn. App. 16 October 1987); *see Moses v. Sanford*, 70 Tenn. 655, 659 (1879); *Moore v. Queener*, 464 S.W.2d 296, 302 (Tenn. App. 1970). "The principle of an estoppel of this character is that the party who is to be effected by it has, by his own word or conduct, misled another into a course of action that, if the estoppel is not enforced, will work an injury to him who is thus misled." *Moses*, 70 Tenn. at 659.

In this case, there were misrepresentations, but they were not made by appellee. Instead, it was the Bank, a non-party, who represented to appellants that they would be able to use the driveway to get to Tracts One and Two. There is no evidence in the record that appellee made any misrepresentations to appellants. Further, there is no evidence that appellee knew of the misrepresentations made by the Bank. Because appellee failed to make any misrepresentations on which appellants detrimentally relied, this court may not estop appellee from denying the existence of an easement.

For the foregoing reasons, we find that there are no legal or equitable arguments sufficient to merit a finding that appellants have an easement over the Driveway Tract. Therefore, the judgment of the trial court is affirmed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to appellants.

10

_____
Samuel L. Lewis, Judge


Concur:


_____
Henry F. Todd, P.J., M.S.


_____
William C. Koch, Jr., J.


11