IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## CRESTIN BURKE, ET AL. v. JAMES MONTY BURKE, ET AL.

**Direct Appeal from the Chancery Court for Scott County**
**No. 8026, Billy Joe White, Chancellor**

---

**No. E1999-02481-COA-R3-CV - Decided May 10, 2000**

---

This is a suit wherein the Plaintiffs sought an easement by reason of real property being landlocked. The defendants contended that the property was not landlocked. The Chancellor found that the property was landlocked and granted an easement to the property. The plaintiffs appealed. We find that the Trial Court's action was appropriate and affirm the judgment entered.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

GODDARD, P.J., delivered the opinion of the court, in which SUSANO and SWINEY, JJ., joined.

Michael Hatmaker of Jacksboro for the Appellants

Johnny V. Dunaway of LaFollette for Appellees

### OPINION

This is a property dispute between some of the beneficiaries under the Last Will and Testament of Rilda Burke. Mrs. Burke owned two tracts of property - an upper tract and a lower tract. Shortly before her death, she gave portions of the lower tract she owned to the defendants, reserving only a life estate in the property. After her death, the upper tract of property was ordered to be sold by the Probate Court because her estate was insolvent. The upper tract, however, in the opinion of the plaintiffs was landlocked. The plaintiffs filed suit seeking an easement giving access from a public road to the upper tract over portions of the property owned by defendants. In this appeal, the defendants, James Monty Burke and Carissa Joy Burke, are challenging the decision of the Scott County Chancery Court ordering an easement across their property.

### I. FACTS

Rilda Burke was the second wife of Will Hade Burke, who died in April 1970. Rilda Burke died in September 1995 at the age of eighty-eight. She and Mr. Burke had ten children. Two of her ten children, James Lestor Burke and Minda Ann Williams, qualified to administer her estate in Probate Court and filed an action against all other family members, including several children that

Mr. Burke had by a prior marriage.[1]  Subsequently, Mrs. Burke's Last Will and Testament, naming her daughter, Connie Terry, as Executrix, was discovered under a floor board in her house and filed with the Scott County Probate Court. As a result, Connie Terry, Executrix, was substituted as a party for James Lestor Burke and Minda Ann Williams, co-administrators of Mrs. Burke's estate.  The Probate Court declared Mrs. Burke's estate insolvent and ordered a sale of her assets to satisfy the debt.  The estate's only asset was a 71.56 acre tract of land.[2]  The plaintiffs insist the upper tract was landlocked.  None of the parties wanted their land to be burdened with an easement to the upper tract.  The parties were unable to reach agreement on a right-of-way to the property and this suit resulted.

## A.  BACKGROUND

Mr. and Mrs. Burke owned two tracts of realty in Scott County, Tennessee.  Mr. Burke purchased the lower tract in November 1922 from William Phillips. He purchased the upper tract in October 1954 from E. C. Terry.  After Mr. Burke's death in 1970, the heirs of Will Hade Burke[5] executed a Warranty Deed to four tracts of land to Rilda Burke, the widow of Will Hale Burke.  It appears that the Probate Court determined that Mr. Burke only leased portions of the property referenced in the Warranty Deed and did not actually own all the land.

## B.  HISTORY OF THE UPPER AND LOWER TRACTS

Until shortly before her death, Mrs. Burke owned these two tracts of land - the upper tract and the lower tract.  The upper tract is directly to the north of the lower tract. The year before her death, Mrs. Burke executed three deeds affecting the ownership of land in the lower tract.

The first was to her daughter, Minda Ann Williams.  This deed conveyed a six acre tract, tract 19.03, and a one acre tract, tract 19.05.  Mrs. Williams then conveyed the six acre tract to Garry and Lisa Williams, her son and daughter-in-law.  She conveyed the one acre tract to her son-in-law and daughter, Larry Pendegrass and Beverly Pendegrass. These tracts lie to the south of the county maintained road.

The second deed for nine acres, tract 19.02, was conveyed to James Monty Burke and Carissa

---

[1]Mr. Burke was previously married to Winnie West.  They had the following children: Ova, Mitchell, Ester, Alice Burke Walker, and Dorothy Burke Marcum. The children of Mr. Burke and Rilda Burke children are:  Connie Burke Terry, Lewis Burke, T. L. Burke, Howard Burke, J. D. Burke, Elizabeth Burke Boyatt, Minda Ann Williams, Jessie Burke, Creston Burke, and Lester Burke.

[2]This tract was called by various names: Tract 19, the Silas West tract, and the upper tract.

[5]Connie Burke Terry, Lewis Burke, T. L. Burke, Howard Burke, J. D. Burke, Elizabeth Burke Boyatt, Minda Ann Williams, Jessie Burke, Crestin Burke, and Lester Burke.

Joy Burke, who are children of James Lester Burke. This was the tract of land on which Mrs. Burke's home was located and where the county maintained road ended. The third deed was also to James Monty Burke and Carissa Joy Burke for the forty-four acres, tract 19.04, surrounding the home place tract. The county maintained road traveled across this tract to the home place. Mrs. Burke reserved a life estate in both of these tracts.

Directly to the west of the lower tract is a road, which has been maintained by the county. This road comes off of Station Camp Road and runs by a church, Tract 16; across a tract of land owned by Crestin Burke, tract 12.02; across a tract of land owned by J. D. Burke, tract 19.01, along the side of the six acre tract, tract 19.03, owned by Mr. and Mrs. Williams; then along the side of the one acre tract, tract 19.05, owned by the Mr. and Mrs. Pendegrass, to the home place, or lower tract. There is no dispute by the parties that this is a county maintained public road.

The defendants contend that there is an easement by prescription, Mitchell Road, lying directly to the west of the upper tract of land. Mitchell Road allegedly goes from Station Camp Road at the southern edge of property owned by David Laxton[6] on the north and the northern edge of property owned by Crestin Burke on the south, and then directly through property owned by J. D. Burke.[7] The defendants aver that this easement has been in effect since 1919.

## C. TESTIMONY AT TRIAL OF PRINCIPAL WITNESSES

### TESTIMONY OF CRESTIN BURKE

Crestin Burke, is one of the ten children of Will Hade Burke and Rilda Burke. He testified that his half-brothers, Herman Burke, Mitchell Burke and Ovie Burke lived in residences located on the upper tract and used the Mitchell Road for ingress and egress. Mitchell Burke lived there until the late 1950's. Ovie Burke lived there until the early 1960's. Since then only hunters, loggers, and farmers have occasionally used the road.

He and David Laxton bought their property, which is immediate west of the upper and lower tracts of land, from Anderson Hoffstettler and Hillsboro Corporation in 1995. Their deeds call for their boundary line to be the center of Mitchell Road. He also testified that in 1978 through 1980, he used a roadway located on the western portion of the lower tract to log the upper tract.

---

[6]David Laxton is unrelated to the parties to this suit and is not himself a party.

[7]This property is already subject to an easement [the county maintained public road] on the southern portion of the property.

TESTIMONY OF DOROTHY MARCUM

Dorothy Marcum, 85, is Mr. Burke's daughter by his first marriage.  She testified about

crossing the property of Mitchell and Ovie Burke to get to her school around 1917. However, her testimony was not very enlightening to this court.[8]

## TESTIMONY OF ALICE WALKER

Alice Walker, 77, is another of Mr. Burke's daughters by his first marriage. She testified that she and her husband built a house near Mitchell Burke's house. She lived there three different times beginning in 1940. Her husband drove a school bus at times. When her husband would get laid off, they would move back to the home on the upper tract of land. When she was young Bethelona Church was located back where her brother Mitchell Burke lived. The church was torn down and rebuilt down the road. She does not know who owned the land, but she thought her father owned it.

## TESTIMONY OF WILDA BURKE COLLINS

Wilda Burke Collins was married to Mitchell Burke. She and Mitchell were married in 1939. They lived on the upper tract from 1939 until 1963. She lived close to the Burke's property before she married Mitchell. In 1936, she first saw logging trucks use Mitchell road. The house was built on land owned by Mr. Burke. Mitchell kept cattle on the land in the 1960's. She has not returned

---

[8]Dorothy Marcum testimony was unclear as to what road or path she is talking about. For example:

Q     Do you know where that school was located?
A     Yes, ma'am.
Q     Where?
A     Well, now, I don't know whether you know or not, but it was way over the back of Bill West's. Now, a lot might know where it was. That's where I went. You see, now I was seven year old and I'd walk up to the road --
Q     Which road were you walking on?
A     Do what?
Q     Which road were you walking on?
A     Well, I got up to the road and I went on the main road, you know.
Q     The main road?
A     The main road, way down there a piece, then I cut off and went through that road well that's there now.
Q     Which road is that?
A     Well, you turn off way down at that main road, you know, you turn off and that was the school where I went.
. . .
Q     So, you crossed their property to get to the school?
A     Yeah, I went that very road.
Q     You went from Station Camp to a road across their property?
A     Yeah, I went to – yeah, that's the way I went to school.
T. p. 107, lines 4-25; p. 108, lines 22-25; p. 109, lines 1-4.

to the property since Mitchell died in 1971. She doesn't know who owned the property which they crossed going from Station Camp Road to their residence.

## TESTIMONY OF LISA WILLIAMS

Lisa Williams testified by deposition that she and her husband had been married for over ten years. Her mother-in-law made a gift to her of land on which she and her husband built their home. Rilda Burke had deeded the property to her mother-in-law. During that period of time Lisa Williams and her husband, Gary, had been on the upper tract property several times using the Mitchell Road.

## II. HOLDING OF THE TRIAL COURT

A default judgment was entered against Larry and Beverly Pendegrass on October 21, 1997. On March 13, 1998 a voluntary non-suit was taken as to James Lester Burke and Minda Ann Williams. On March 13, 1998, Connie Terry was substituted as a party as Executrix of the Estate of Rilda Burke. During the trial of the case the plaintiffs non-suited their case against Mr. and Mrs. Gary Williams and Mr. and Mrs. Larry Pendegrass.

By order entered on April 27, 1998, Chancellor Billy Joe White found that a roadway could not be located across the real property owned by J. D. Burke, Crestin Burke and David Laxton because the roadway commonly known as Mitchell Road was never held adversely; and David Laxton, who would be a necessary party, was not made a party to the litigation.

> [T]he 71.5 acre tract of land owned by the Estate of Rilda Burke as described in paragraph 4 of the Complaint and being a portion of the property described in Warranty Deed Book 133, Page 336 in the Register's office for Scott County, Tennessee, is the dominant estate and the 44 acre tract of land and a 9 acre tract of land owned by James Monty Burke and Carissa Joy Burke as described in Warranty Deed Book 205, Page 248 and Warranty Deed Book 205, Page 473 in the Register's Office for Campbell County, tennessee, are the subservient estate. These tracts of land were previously owned by a common grantor, Rilda Burke.

> [T]he dominant estate is entitled to an easement across the subservient estate as a way of necessity from the 71.5 acre tract to the County road, since the dominant estate is landlocked.

The Chancellor then held additional hearings to determine the location of the roadway along a route "that will be the least expensive, most convenient and least intrusive to the subservient estate." On September 9, 1998, he found two of the three alternative routes for the easement to be cost-prohibitive and that the roadway should be constructed along the route as proposed by surveyor,

Jerry Crutchfield, as alternative C or 3[9] at the hearing held on August 11, 1998. He ordered as follows:

> [T]he dominant estate, consisting of approximately 71.5 acres, as described in paragraph 4 of the complaint, is hereby granted a permanent roadway easement which shall run with the land, across the subservient estate owned by James Monty Burke and Carissa Joy Burke (as described in Warranty Deed Book 205, page 248 and Warranty Deed Book 205, page 473) as a way of necessity from the 71.5 acres to the country road.

> To aid plaintiff with construction of the roadway, plaintiffs are granted a 50' wide temporary easement to give the road builder adequate space for moving equipment which constructing the roadway. The 50' temporary easement shall be marked by temporary flags placed by plaintiffs' surveyor.

> Plaintiffs shall secure the placement of an appropriate culvert where the roadway crosses the creek.

On December 1, 1998, the Chancellor entered an additional order setting forth the permanent right-of-way in metes and bounds, across the real property owned by James Monty Burke and his sister, Carissa Joy Burke.

Defendants James Monty Burke and Carissa Joy Burke filed a motion seeking a new trial which was denied by the Chancellor. Subsequently, James Monty Burke and Carissa Joy Burke filed a timely appeal.

## III. ISSUES

The single issue presented for our review is:
Did the Chancellor err in holding a 71.5 acre tract of realty "landlocked," and therefore a dominant estate entitled to a permanent easement as a way of necessity over the subservient estate?

## IV. LAW, DISCUSSION and HOLDING

Our standard of review is as follows: "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Rule 13(d), Tennessee Rules of Appellate Procedure.

---

[9]Counsel for the defendants in oral argument conceded that if the plaintiffs were entitled to an easement, the one chosen by the court was an appropriate one.

In a *de novo* review, the parties are entitled to a reexamination of the whole matter of law and fact and this court should render the judgment warranted by the law and evidence. Thornburg v. Chase, 606 S.W.2d 672 (Tenn. Ct. App. 1980); American Buildings Co. v. White, 640 S.W.2d 569 (Tenn. Ct. App. 1982); Rule 36 of the Tennessee Rules of Appellate Procedure. No such presumption, however, attaches to conclusions of law. Adams v. Dean Roofing Co., 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986).

Additionally, it is a well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); Bowman v. Bowman, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991).

An easement is
> An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road).

Black's Law Dictionary 527 (7th ed. 1999).

> An easement which by grant, reservation or prescription is appurtenant to land is not a mere privilege to be enjoyed by the person to whom it is granted or by whom it is reserved. It passes by a deed of such person to his grantee and follows the land without any mention whatever.

10 Tenn. Juris., *Easements*, § 2.

The doctrine of implied easements, however, are not favored in the law. The burden of proof rests with the person asserting it to show the existence of all facts necessary to create by implication an easement appurtenant to his estate. Such easements basically are founded on conveyances and are premised upon the presumption that they were within the contemplation of the parties and must be supported by a unity of title. Line v. Miller, 43 Tenn. App. 349, 309 S.W.2d 376 (1957).

"If the land granted is partly surrounded by that of the grantor and partly by that of strangers, a right of way over the remaining land of the grantor exists by necessity. If the land retained is surrounded by the land conveyed and the land of strangers, the grantor is entitled to a way of necessity over the land conveyed." *See generally*, Morris v. Simmons, 909 S.W.2d 441 (Tenn. Ct. App. 1993) and cases cited therein at 444. As in the present case, the only issue on appeal in Morris was whether the trial court erred in finding that the complainant was entitled to the right-of-way upon the theory of implied reservation based upon necessity. In Morris the plaintiff's predecessor in title owned the tract of land that included both the complainant's and the defendant's property. The plaintiff's property was retained and the property owned by defendant was conveyed. In Morris the plaintiff's land was surround by the land of the defendant and by a curve of the river. In this case, the Plaintiffs' land is surrounded by land of the Defendants and strangers. The Court in Morris quoted with approval from Harris v. Gray, 28 Tenn. App. 231, 188 S.W.2d 933 (1945), as follows:

-8-

The most recent case of our courts on the precise question here involved is the case of *La Rue v. Greene County Bank*, *supra*. After reviewing decisions of this state and of other jurisdictions our Supreme Court stated the rule to be, *La Rue v. Greene County Bank*, 179 Tenn. 394, 409, 410, 166 S.W.2d 1044, 1050: "We think it is not in conflict with our own cases, or the general rule of law applicable to implied easements, to hold that such easement will not arise upon the sale of the servient tenement in favor of the owner of the dominant estate, unless it is of such reasonable necessity to the full enjoyment of the dominant tenement as to create a clear presumption in favor of the grantor. And this may be found in the use made of the premises prior to and at the time of the severance of the estates, whether one parcel or lot was used for the benefit of another, and, if so, to what extent, as well as the benefits enjoyed by reason of such use. It follows that the necessity must appear at the time of the sale or disposition of the servient estate, and not at some future and indefinite time when the owner of the dominant estate, or those claiming under him, may consider the need or desirability of an easement in the property."

Morris v. Simmons, 909 S.W.2d at 445.

The appellant cites only two cases in support of its position that the Chancellor erred in holding that the upper tract of land was landlocked and in granting a permanent easement as a way of necessity over the subservient estate or lower tract.

The first is Cole v. Dych, 535 S.W.2d (Tenn. 1976). This case dealt with an easement of ingress and egress to an old cemetery. Our Supreme Court held that where property owners' predecessor in title fixed and established a road to the cemetery in its present route and considered the road was for the use of the people that were interested in using the cemetery for any purpose, his action was a dedication of the road and, upon acceptance and use by those going to and from the cemetery, dedication became unqualified and complete and could not be withdrawn. We imagine that this case was cited because at one time Bethelona Church was located near where the Mitchell Burke residence in the upper tract. The church was torn down and rebuilt elsewhere. The church was used during the time that Mr. Burke had the adjoining property under lease over which the church goers could use the property with his permission.

The second case is the City of Whitwell v. White, 529 S.W.2d 228 (Tenn. Ct. App. 1974), *cert. denied* June 2, 1975. This Court held that where White sold a land-locked section of his property to complainant's predecessor, there was implied and created, a way of necessity. The Court also held that the right attached to the land and inured to the grantee's successors and the fact that the complainant's neighbor allowed a way across his property to the public road did not defeat the way of necessity. We find neither of these cases to be supportive of the Defendants' position, but rather of the Plaintiffs' position.

While Rilda Burke and/or Mr. Burke may have owned more property during their lifetimes than the upper and lower tracts of land, on the facts in contained in the record before us, the only thing that is clear as to the unity of title, one of the requirements of finding as easement as a way of necessity, is that Rilda Burke owned the two tracts of land that are at issue here.

-9-

In this matter, moreover, the trial court was in a far superior position to assess, not only the credibility of the witnesses, but also the evidence because of the inability of this court to determine exactly what the witnesses were referencing as they would refer to documents that the trial court was privy to view, but inadequately marked so that this court could not determine exactly what the witnesses were testifying. Examples are the testimony of Dorothy March contained in footnote 8 and the following testimony of Crestin Burke.

Q        Would you come down to this easel please, and I want you to point out to the Court where the fields were that your father maintained for hay of crops?
A        Well, up till 1970 he used all this in here, and about 1961 – after '61 he used all this, too.
Q        Your dad did?
A        Yeah.
Q        Now, you indicated at sometime you went in here and timbered this seventy-one acre tract?
A        Well, I cut all this. I started right here on this lower side, I cut all this down in here --
Q        Yes, sir.
A        – and come through here on this back side in 1979, '80, and '81. I come up through here with it and the house sits right here. Come right up by the house with it and the country road about there.

T. p 46, lines 8-23.

And again, Crestin Burke testified:

Q        Show me where we are on this plat with 6M. Where is this located on this Plat No. 5?
A        This photograph here is approximately right in here because this is the old house place.
Q        Right.
A        And this is it right beside it right there.

T. p. 63, lines 10-16.

The Chancellor, who was in the best position to do so, found the facts fully and completely. The evidence supports his decision that the tract in question was not served by public road nor by any prescriptive easement, and we concur in his determination.

## V. CONCLUSION

We affirm the decision of the Chancellor in all respects. The costs of this appeal are adjudged against the Appellants, James Monty Burke and Carissa Joy Burke and their surety. The cause is remanded for enforcement of the decree and for such other proceedings as may be necessary.