IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2004 Session

## DAVID L. BUCK AND CHRISTOPHER L. BUCK
v.
## JAMES W. AVENT AND WIFE, BERNADINE AVENT,
AND TIMMY AVENT

**An Appeal from the Chancery Court for Hardeman County**
**No. 12756 R.D.    Martha Brasfield, Chancellor**

_____

**No. W2003-00934-COA-R3-CV - Filed October 1, 2004**

_____

This is an action to establish an easement. The plaintiffs' property adjoins the northern boundary of the defendants' property. The plaintiffs' property is landlocked. To access the property, the plaintiffs historically used an old logging road on the northeastern corner of the defendants' property. In 1998, the defendants made improvements that effectively blocked the plaintiffs' passage over the old logging road. The plaintiffs filed this lawsuit to establish an easement over the old logging road and to enjoin the defendants from further impeding their use of the easement. After a bench trial, the trial court determined that the plaintiffs had established prescriptive easement and an implied easement over the defendants' property. The trial court directed the plaintiffs' expert, a surveyor, to establish the exact property lines between the parties' properties, and ordered the defendants to restore the plaintiffs' property to its original state according to those boundaries. From that order, the defendants now appeal. We affirm the trial court's conclusion that the plaintiffs established a prescriptive easement and an implied easement, and reverse in part and remand for the trial court to allow the parties an opportunity to submit further evidence on the exact boundary line between their properties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Affirmed in part, Reversed in part and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

T. Holland McKinnie, Franklin, Tennessee, for the appellants, James W. Avent and wife, Bernadine Avent, and Timmy Avent.

H. Morris Denton, Bolivar, Tennessee, for the appellees, David L. Buck and Christopher L. Buck.

**OPINION**

This lawsuit involves six tracts of property located in Hardeman County, Tennessee, near the Hatchie River. Originally, the six tracts constituted one piece of property. In 1933, the large tract was divided into six smaller tracts. The property is used for hunting, farming row crops, and harvesting timber. Defendants/Appellants James W. Avent ("Avent") and his wife, Bernadine Avent, own one tract, referred to herein as Tract 3. Avent and Defendant/Appellant Timmy Avent, the Avents' son, own Tract 6, which is not involved in this lawsuit. James, Bernadine, and Timmy Avent will be referred to collectively as "the Avents." Plaintiffs/Appellees David L. Buck ("David") and his son, Christopher L. Buck ("Christopher") (collectively, "the Bucks"), own four noncontiguous tracts of real estate – Tracts 1, 2, 4, and 5 – adjoining the Avents' property. Tract 4 lies on the northern border of the Avents' Tract 3, and does not adjoin any of the other tracts owned by the Bucks. Tract 5 lies to the east of Tract 3, and does not adjoin any of the other tracts owned by the Bucks. Tract 4 is landlocked, but Tract 5 is not. To access Tract 4, the Bucks must travel to the northwest corner of Tract 5, and then use an old logging road located at the northeast corner of the Avents' Tract 3. The old logging road leads to and continues on through Tract 4. The Bucks' right to use of the old logging road to access Tract 4 is the subject of this lawsuit.[1]

A further description of the route of the old logging road is helpful to an understanding of the issues in this case. The road begins as a public road running north and south along the shared border of the Bucks' Tract 2 and the Avents' Tract 6. At some point, it becomes a private road and most, if not all, of the road is located on the southeastern border of the Avents' Tract 3. The road then heads in a northeasterly direction until it comes to a point just west of the common line between the eastern line of Tract 3 and the western line of Tract 5, and is approximately 450.5 feet south of the northwest corner of lot 5. The road then heads north just west of the common line to the very tip of the northwest corner of Tract 5. At this point, the road splits. On one side of the split, the road turns east through property referred to as "the Story tract," owned by the Avents, toward the Hatchie River. On the other side of the split, the road veers just over the northeast corner of Tract 3 to the southeast corner of Tract 4 and on through Tract 4. The part of the road on Tract 3 that leads to Tract 4 is the portion of the old logging road that is in dispute.

Prior to 1998, the old logging road was flat and even with the ground. In 1998, the Avents made modifications to the road along the portion of it that turned to the east toward the Hatchie River. As part of the modifications, they dug a ditch along the west side of the road. This caused the road to act as a levee, resulting in water collecting on the Bucks' property rather than drain off as it had done prior to installation of the ditch. The level of the road was then raised approximately four feet. The raising of the road bed combined with the installation of the ditch made it such that

---

[1]Trial Exhibit 5 is a map of the properties involved in this lawsuit. The trial court noted that "[i]t will be necessary to have copy of Exhibit 5 at hand in order to understand the layout of the property . . . ." We agree that seeing the layout of the various tracts of land in Exhibit 5 is helpful to an understanding of this case. Therefore, we have included a map of the properties involved as "Exhibit A."

the road could not be crossed by vehicle. This blocked the Bucks' use of the old logging road to access Tract 4 from Tract 5.

On December 21, 1999, the Bucks filed the instant lawsuit, seeking to enjoin the Avents from taking action to deny them access to Tract 4. The Bucks alleged that by raising the road bed and installing the ditch, the Avents in essence had built a levee, partly on the Bucks' side of the property line, and that the levee prevented the Bucks from using the old logging road on the Avents' property to access the Bucks' Tract 4. The Bucks claimed that the blocking of the old roadway violated their "right by prescription to use said roadway," and that they and their predecessors in title has used the roadway "for more than twenty (20) continuous years." The Bucks also sought damages, claiming that the Avents used topsoil from the Bucks' property to construct the levee. The Bucks sought to have their property restored to the condition it was in prior to the Avents building of the levee. In response, the Avents denied the allegations and denied that the Bucks had an easement or were entitled to any relief.

On October 3, 2001, the matter went to trial. James Wiles ("Wiles"), a surveyor, testified on behalf of the Bucks. Wiles explained the boundaries of the tracts of land involved in this lawsuit, outlining the Bucks' and the Avents' properties and showing the location of the old logging road in question, at the northeast corner of Tract 3. He stated that he had surveyed the same property in 1977 and again in 1998.

As background, Wiles explained that, prior to 1933, when the land was subdivided, it was owned by David Buck's great-great-grandfather, Joel A. Parker. As the Bucks did in their complaint, Wiles called the raised road and the ditch a levee, explaining that the road turned east toward the river. He said that some, but "not a whole lot," of the levee was on the Bucks' property, and that dirt was taken from the Bucks' property to build the levee, leaving the deep ditch on its west side. Wiles testified that, consequently, it was "simply impossible" to cross over the levee to access Tract 4 without building some type of bridge. Wiles maintained that he was not aware of any other way to access the Bucks' Tract 4 except by using the old logging road over the Avents' Tract 3.

David Buck also testified at trial. He explained that the tracts he owned had previously been owned by his grandfather, Guy Parker, and that he (Buck) actually lived on the property until about 1947, when he was five years old. He said that, in the twenty years prior to the trial, he had made frequent trips to the property "except for the last six years." Buck submitted photographs to show that the modified portion of the Avents' road was too high and the surrounding ditch too deep for someone to drive over it. He also stated that this "levee" was built partially on his property with dirt taken from his Tract 5. Buck maintained that, contrary to assertions by James Avent, he did not give Avent permission to dig on the Bucks' land to build up the road.

Buck also testified about his family's use of the old logging road. Buck said that he and his family had been using the old logging road to access Tract 4 "as long as it has been there . . . [since] '38, back in the '30s when Mr. Ray surveyed it." He testified that in the 1950s, when he hunted as a young boy with his grandfather, he used the old logging road to keep from getting lost. He

explained that, prior to 1977, vehicles could not be driven on the road, and that they traversed it on foot or by mule to access Tract 4. In 1977, he said, the road became drivable. At that time, Buck inherited his one-half of the property and sold timber and cleared the land. Buck said that, during all of this time, they used the road without a problem until 1998, when the Avents began constructing the levee. Buck testified:

> I didn't ever know we were having a problem. I started seeing the levee going up and couldn't get across. As far as having any words about it [with Avent] we never did. I went and asked [Avent] about getting a right-of-way and what he told me was that "yeah, go ahead but you stay off that road when it is wet[.]" [A]nd after that the levee started going up.

Buck later clarified that Avent's comment regarding staying off the wet road was made after Avent began building the levee. When he was asked whether he and Avent ever actually discussed whether he could use the roadway, Buck said, "No, sir, I just always took it for granted that I could use it and never had any problem." On cross-examination, Buck was asked whether he had ever requested permission from Avent to bring "logging equipment and such as that" across the old logging road leading to Tract 4. Buck said that personally he did not ask for permission, but that he "had a timber cruiser who took care of that part of it" by clearing it up with Avent. Buck conceded that "[t]here was no doubt between [Avent and him] that the road belonged to [Avent]." Buck agreed that it was Avent's road, and that Avent "was giving him the right to use it." Buck said that he was unaware of any other way to access Tract 4, and that he has been blocked from accessing Tract 4 since the levee was built.

Buck also called as a witness Jimmy Eubanks ("Eubanks"), who hunted and fished with Buck and his family on the Bucks' property between 1958 and 1965. Eubanks testified that when he hunted on Tract 4, he and the others walked onto the property over the old logging road at issue. When asked if he had permission to do so, he replied, "Well, you know back then you really didn't have to have permission back then. Pretty much everybody hunted on everybody." Harris David Clark ("Clark") testified on Buck's behalf as well. Clark said that he worked with Buck on his property in 1995, helping him trap beavers on Tract 4. He said that he and Buck used the old logging road to access the property for several years until Avent began building up his road. Clark said that, in 1998, Avent began building the levee partly on the Bucks' property. Clark testified that, when the levee was built, he and Buck could no longer use the old logging road, and that Avent said that they could not cross his property. Clark also said that he knew of no other way to access Tract 4.

James Avent testified on his own behalf. Avent said that he purchased Tract 3 in 1975 or 1976. At that time, Avent was aware that the Bucks and their friends had in the past used the old logging road to access Tract 4. Avent recalled when Buck was selling timber off of Tract 4, and the timber company sought permission to use the old logging road. Avent said that he would not allow the bull dozers to "tear up" his road, and told the timber company to make their own road on the Bucks' field. Eventually, the timber company paid Avent $2,000 for use of the road to access Tract 4.

Avent also testified about his construction of the "levee." Avent stated that in approximately 1998 he began building up his road, and that he was not building a levee, as had been described by others. Avent explained that a levee is higher than a road and is built for blocking water. He said that he built up the road in order to widen it and keep it dry so that it would be more useful to him. Avent stated that he may have used "a little bit" of dirt from the Bucks' property to build up the road, but he did not think that any of the road lay on the Bucks' property. He acknowledged that he had put a ditch on the side of the road, in order to help drain water off the field. He conceded that building up the road made it difficult for the Bucks to use the road to access Tract 4. Avent said that he knew that the Bucks had been using his road, and that they used the road with his permission. He said he had no problem with the Bucks using the road "except when they would go down when it was muddy and slide off and get stuck." Avent claimed that he allowed the Bucks to use the road "as long as they used it when it was dry."

At the conclusion of trial, the trial court took the matter under advisement. On November 25, 2002, the trial court entered an order granting a judgment in favor of the Bucks. The trial court held that the Bucks had proven by clear and convincing evidence that they had both an easement by implication and an easement by prescription over the old logging road on the northeast corner of Tract 3. Accordingly, the trial court ordered the Avents to reconstruct the improved road to allow the Bucks to use the old logging road to gain access to Tract 4. The trial court also ordered the Avents to restore the Bucks' property to the condition it was in prior to the modifications made to the road. The trial court noted that the Bucks' surveyor, Wiles, had testified that part of the modified road was on the Bucks' property, but that he had not determined exactly how much. To remedy the problem, the trial court ordered that Wiles "return to the property and shoot the line . . . and set up stakes setting out the boundary line between the [Bucks'] and the [Avents'] property. The [Avents] will be required to move [their] road so that it lies entirely on [their] property and does not encroach upon the [Bucks'] property." The trial court ordered that all future surveying costs be paid by the Avents. The Avents filed various post-trial motions, which were denied. The Avents now appeal.

On appeal, the Avents argue that the trial court erred in concluding that the Bucks had a prescriptive easement and an implied easement over their property. The Avents first allege that the trial court erred in determining that the Bucks had established a "claim of right" to a prescriptive easement when the evidence showed that the Bucks' use of the Avents' property was permissive. They also argue that the Bucks did not show by clear and convincing evidence the other elements of a prescriptive easement. Next, the Avents maintain that the elements of an implied easement were not established at trial. Finally, the Avents argue that the trial court erred in ordering that Wiles act as a Special Master in determining for the court the boundary line between the parties' properties, asserting that giving Wiles' findings the force of law is impermissible.

The trial court's decision is reviewed *de novo*, presuming the trial court's findings of fact to be correct, unless the evidence preponderates otherwise. *See Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000); *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991). Questions of law are reviewed *de novo*, with no presumption of correctness. *See State v.*

*Levandowski*, 955 S.W.2d 603, 604 (Tenn. 1997); *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 80 (Tenn. 1996).

A brief discussion of the law of easements is helpful for the analysis in this case. "An easement is a right an owner has to some lawful use of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). In Tennessee, courts have recognized many ways in which an easement can be created. In *Pevear*, the court recognized six such ways: (1) by express grant, (2) by reservation, (3) by implication, (4) by prescription, (5) by estoppel, and (6) by eminent domain. *Id.* at 115-16. Generally, easements fall into one of two categories, easements in gross or easements appurtenant. "Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property," and such easements usually involve only one parcel of land. *Id.* at 116. In the case of an easement appurtenant, two tracts of land are involved, and the owner of the dominant tracts seeks to use the servient tract for his own benefit. This case involves an easement appurtenant, in that the Bucks, the owners of the dominant tract, seek an easement over the Avents' servient tract for the Bucks' benefit.

The trial court here found that the Bucks' easement appurtenant was created by prescription and also by implication. We shall first discuss the easement by prescription, then the easement by implication.

In order to establish a prescriptive easement, or an easement by prescription, a plaintiff must show the following:

> [T]he use and enjoyment of the property must be adverse, under a claim of right, continuous, uninterrupted, open, visible, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. . . . In Tennessee the prescriptive period is 20 years.

*Id.* Thus, a prescriptive easement arises when a person acts under an adverse claim of right in using the property of another for the full twenty (20) year period with the owner's "knowledge and acquiescence." *See Laurel Valley Prop. Owners Ass'n v. Hollingsworth*, No. E2003-01936-COA-R3-CV, 2004 WL 1459404, at *8 (Tenn. Ct. App. June 29, 2004). The elements required to show an easement by prescription are "substantially the same in quality and characteristics as the adverse possession which will give title to real estate." *House v. Close*, 346 S.W.2d 445, 448-49 (Tenn. Ct. App. 1961).

If the owner of the dominant tract enjoys the use of the servient tract with the *permission* of the owners of the servient tract, then the use is not under an adverse claim of right. The use is then characterized as permissive, and cannot be the basis of an easement by prescription. "An inception of the right in mere permission stamps the character of the use as permissive," and "unless some distinct and positive assertion of a right hostile to the owner of the servient estate appears, the use cannot ripen into an easement by prescription, no matter how long the permission may continue." *Reider v. Orme*, 68 S.W.2d 960, 962 (Tenn. Ct. App. 1933). The burden is on the party seeking the

prescriptive easement to establish by clear and convincing evidence all of the elements of the easement. *Blakemore v. Matthews*, 285 S.W. 567, 567-68 (Tenn. 1926); *Stone v. Brickey*, 70 S.W.3d 82, 86 (Tenn. Ct. App. 2001).

The Avents argue on appeal that the trial court used the wrong legal standard in concluding that the Bucks demonstrated an adverse claim of right to the prescriptive easement. The Avents claim that the standard used by the trial court is too narrow to give proper meaning to the "adverse claim of right" requirement. They contend that a legal presumption arises that the use is permissive, not adverse. *Blakemore*, 285 S.W. at 567-68. The evidence submitted at trial, the Avents argue, did not overcome the legal presumption that the Bucks' use of Tract 3 was permissive, rather than adverse.

In analyzing the Bucks' adverse claim of right to a prescriptive easement, the trial court stated that " 'permission' is not the equivalent to 'knowledge and acquiescence' coupled with the failure to object to the use of the easement." Quoting from *House v. Close*, *supra*, the trial court noted:

> [I]n discussing the use that is adverse, it is stated that to be adverse, the use must be under a claim of right inconsistent with or contrary to the interest of the owner and of such a character that it is difficult or impossible to account for it except on the presumption of a grant; or use under a claim of right known to the owner of a servient tenement; or use whenever desired without license, or permission asked, or objection made such as the owner of an easement would make of it, disregarding entirely the claims of the owner of the land.

*House*, 346 S.W.2d at 448. The trial court recognized that the term "with knowledge and acquiescence of the owner" appears to conflict with "adverse use" versus "permissive use." The trial court then noted that if permission were simply "knowledge and acquiescence" coupled with the failure to object, then "the holder of the legal title could always defeat an adverse claimant by merely showing that he had never objected to the use of his property." *Lamons v. Mathes*, 232 S.W.2d 558, 553 (Tenn. Ct. App. 1950). We find that the trial court correctly stated the standard for an adverse claim of right to a prescriptive easement.

The Avents maintain that there is a presumption that the adverse use was permissive, and that the Bucks failed to overcome this presumption. The presumption of permissive use was discussed in *Blakemore v. Matthews*, 285 S.W. 567 (Tenn. 1926). In *Blakemore*, the court said that such a presumption arose when "persons travel the private road of a neighbor *in conjunction with such neighbor and other persons . . . .*" *Blakemore*, 285 S.W. at 567-68. In the instant case, there is no evidence that the Bucks ever traveled the old logging road with the Avents. Therefore, the presumption of permissive use claimed by the Avents is inapplicable here.

Even if the trial court correctly stated the standard for an adverse claim of right, the Avents argue, the Bucks did not sustain their burden of proving that they used the old logging road under an adverse claim of right. On this issue, the trial court held:

> [T]here is no proof that the [Bucks] or their predecessors in title asked permission to use the road from the [Avents] or that the [Avents'] predecessors in title, or that the [Avents] or [their] predecessors in title gave permission to the [Bucks] to use the road. Mr. Buck did state that Mr. Avent was "nice enough" to let him use the road, but there is no proof that the [Bucks] ever asked permission . . . [T]he [Bucks] used the old logging road whenever they wanted.

Thus, because the Bucks used the land whenever they wanted, without obtaining permission from the Avents, the trial court concluded that the Bucks had demonstrated an adverse claim of right.

The Avents argue that the preponderance of the evidence shows that Buck never claimed any legal entitlement to use of the land. They cite to the following colloquy:

> [Question]: There was no doubt between the two of you all that the road belonged to [the Avents] at that time, was it?
> [Buck]: That is correct.
> [Question]: It was his road?
> [Buck]: It was his property.
> [Question]: And he was giving you the right to use it, is that right?
> [Buck]: I would agree with that.
> [Question]: Okay.
> [Buck]: But there was also a road bed through there before he bought it but in my eyes the property belonged to him when he bought it [and] he had the say so of who went across it. That is what I am trying to do here today, is get a legal right to go some way to it.

Based on Buck's acknowledgment that he owned no part of the Avents' property, coupled with his testimony that Avent was "nice enough" to let them use his road, the Avents argue that the evidence shows that the Bucks' use of the old logging road was permissive.

Of course, Buck's acknowledgement that the old logging road was on Avent's property and belonged to Avent is not contrary to Buck's claim of an easement. Nevertheless, as pointed out by the Avents, portions of Buck's testimony, taken out of context, could be read to indicate that the Avents had given the Buck's "permission" to use the old logging road to access Tract 4. From our review of his entire testimony, however, it is clear that Buck and his family assumed that they had a right to use the road, and that Avent had never disturbed that right, i.e., he did not object. Indeed, Buck testified that he and his family and friends used the old logging road for years without anyone's permission, even before Avent ever purchased the property in the mid 1970s. Buck asserted that he and his family and friends had been using the road "as long as it has been there," since 1933 when

the property was divided, and that he used it in the 1950s when he hunted with his grandfather. Moreover, Buck submitted the testimony of other witnesses in support of this assertion. Buck's friend, Jimmy Eubanks, testified that he and others used the old logging road as a matter of course in the late 1950s and early 1960s to gain access to Tract 4, albeit on foot until 1977. All of this testimony was unrebutted. Moreover, the Bucks use of the road continued uninterrupted, without first seeking permission from Avent or any other owner, until the problems arose in 1998. Avent admits that he knew the Bucks were using his road, but claims that they used it with his permission. However, Avent failed to identify a time prior to 1998 when he discussed it with the Bucks or gave them permission to use the road. Avent testified that he objected to the timber company's request to bring large equipment over his road in 1977. However, he acknowledged that the timber company cut across his property and did not use the old road for the logging project. Thus, the incident with the timber company does not undercut the trial court's finding. Under these circumstances, we affirm the trial court's finding that Buck used the easement under an adverse claim of right, with the knowledge and acquiescence of the Avents.

The Avents next argue that the Bucks failed to prove by clear and convincing evidence that they enjoyed the use of the old logging road for the prescriptive period of at least twenty consecutive, uninterrupted years. The trial court held that the twenty year prescriptive period had been proven, because the evidence showed that the Bucks used the road without interruption from the 1950s until 1998, when Avent's modification to the road blocked the Bucks from using it.

The Avents allege that the Bucks cannot claim adverse possession prior to 1977, when the timber company asked permission to cross the Avents' property to haul timber, because the timber company's request for permission is inconsistent with the Bucks' claim of adverse use. The Avents assert that the prescriptive period ended no later than 1995. They point out that Buck testified that he had some timber cut from Tract 5 in 1995 to get money to move his mother into a nursing home. At that time, Buck said, Avent expressed displeasure to Buck and the timber company about the damage the trucks were doing to the road. Therefore, the Avents apparently argue that the prescriptive period was from 1977 to 1995, shorter than the requisite twenty years.

The evidence, however, clearly showed the Bucks' uninterrupted use of the property for over twenty years. Buck offered unrebutted testimony that he and his predecessors had been using the road to access Tract 4 since 1933, when the property was divided. Both Buck and Eubanks testified that they used the road throughout the 1950s and 1960s when they were hunting or otherwise on the property. The Bucks used the property to access Tract 4, uninterrupted, until 1998, when the Avents' modifications to the road interfered with their use. Under all of these circumstances, the evidence supports the trial court's finding that the easement had been used for the whole twenty-year prescriptive period. Therefore, we affirm the trial court's conclusion that the Bucks showed by clear and convincing evidence a prescriptive easement in the old logging road over the Avents' property.

The trial court also found that the Bucks' easement appurtenant in the old logging road arose by implication. An easement by implication has four elements:

"(1) A separation of the title; (2) [n]ecessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; . . . (3) [n]ecessity that the easement be essential to the beneficial enjoyment of the land granted or retained"; and (4) "continuous, as distinguished from temporary or occasional" servitude.

*Laurel Valley*, 2004 WL 1459404, at *7 (quoting *Johnson v. Headrick*, 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948)); *see Fowler*, 48 S.W.3d at 741. "[F]or an easement to arise by implication, it must 'be of such necessity that it must be presumed to have been within the contemplation of the parties.' " *Laurel Valley*, 2004 WL 1459404, at *7 (quoting *Johnson*, 237 S.W.2d at 570); *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (Tenn. 1942). Implied easements "are not favored in the law." *Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976). The party asserting the easement has the burden to show the elements of his claim. *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957).

In this case, the trial court held that separation of title was shown because the larger tract was divided in 1933. The trial court determined that the use of the road was reasonably necessary, because Tract 4 is landlocked, and the testimony at trial established that use of the road was needed for access. The trial court held that "the route across the northeast corner of lot number 3 is reasonably necessary for the [Bucks] to enjoy the use of lot number 4." On appeal, the Avents argue that the Bucks failed to show separation of title, that even if there was separation of title there was no evidence that the use before the separation of title was continuous or obvious, and finally that the Bucks failed to show that the easement is essential to their beneficial enjoyment of the land.

The trial court held that separation of title was established, because "the proof shows that the property of the [Bucks] and [the Avents] . . . was once owned by Joel Parker, and that it was divided in 1933." The Avents argue that, although separation of title may have been established with respect to the six main tracts owned by Joel Parker, the Bucks were also required to establish separation of title with respect to the Story tract, the parcel of the Avents' property over which the improved road turns and continues east. Because the Story tract was not part of the 1933 division of the larger six-tract piece of property once owned by Joel Parker, the Avents argue, the Bucks failed to establish this element of its claim. In our view, none of the easement claimed by the Bucks lies on or even adjoins the Story tract. In fact, that tract of land appears to have no bearing on the issues in this case. Its only connection lies in the fact that, when the logging road turns east, it continues on through the Story tract to the Hatchie River. Because no part of the claimed easement lies on that property, the Bucks were not required to show separation of title to that property. Thus, the trial court did not err in concluding that separation of title was established.

-10-

With respect to the second element of an implied easement, the trial court concluded:

> As to the second requirement, Exhibit 5 indicates that lot number 4 is landlocked and that the only access to lot number 4 was and is across lot number 3. According to the testimony, there were many field roads on the original Joel Parker tract, which were used before and after the division in 1933. Mr. Buck and his grandfather crossed the northeast corner of lot number 3 on the old logging road when they were hunting. In the mid 1950's to the mid 1960's, other people (hunters) used the old logging road to access [Tract] 4. In 1977, the logging company used the old logging road to haul timber.

The Avents argue that the trial court erred in concluding that these factors satisfied the Bucks' burden of showing that the use giving rise to the easement had long continued "before the separation [took] place." The Avents claim that the trial court's findings regarding post-1933 use of the old logging road were irrelevant, and that there was no evidence to support a finding about how the old logging road was used before the separation of title in 1933. In response, the Bucks contend that the proof at trial established the use of the road prior to 1933, because Buck testified that he and his family had been using the road to access Tract 4 "as long as it has been there . . . [since] '38, back in the '30s when Mr. Ray surveyed it." The Bucks argue that, if the Bucks' predecessors in title did not use the road to access Tract 4 prior to 1933, there would have been no access to the property at all. It defies logic, the Bucks maintain, to find that Joel Parker would have conveyed a tract to someone if there was no access road to reach the property. Therefore, the use of the record giving rise to the easement had been necessary for so long, it was obvious that it was meant to be a permanent easement.

At the trial, Buck testified that his family had been using the old logging road since "before the separation took place." The land was owned by his great-great grandfather, and Buck lived on the property for the first few years of his life. He was familiar with the land and with his family's use of the property. The Avents proffered no evidence to rebut Buck's testimony. This testimony is sufficient to establish that the road was used prior to the separation of title. In addition, several witnesses testified that there was no access to Tract 4 other than over the old logging road. This testimony was likewise unrebutted. "[C]ourts in Tennessee have interpreted the term 'necessity' as meaning 'reasonably necessary' for the enjoyment of the dominant tenement." *Fowler*, 48 S.W.3d at 741. The testimony at trial was sufficient to establish that use of the old logging road is "reasonably necessary" for the access and enjoyment of Tract 4. Because it was reasonably necessary, "it must be presumed to have been within the contemplation of the parties" at the time the separation of title took place. *Johnson*, 237 S.W.2d at 570; *see Harris v. Gray*, 188 S.W.2d 933, 935 (Tenn. Ct. App. 1945). Therefore, the Bucks have shown that, before the separation, the use giving rise to the easement was so long continued and obvious that it was intended to be permanent.

The Bucks were also required to establish the third element, that the easement is essential to the enjoyment of the land. Again, the trial court noted the overwhelming evidence that the only practicable way to access Tract 4 is over the old logging road on Tract 3. In this sense, this case is

similar to the situation in *Fowler v. Wilbanks*, *supra*. In *Fowler*, the plaintiffs purchased undeveloped property in 1996, and in the same year the defendants purchased property that adjoined the northern border of the plaintiffs' property. Both parcels were once part of a larger piece of property owned by the father of one of the plaintiffs. *Fowler*, 48 S.W.3d at 739. The plaintiffs sought an easement over a gravel driveway located on the defendants property in order to access their own property. The road had been in existence for at least thirty-five (35) years, and there had never been a dispute over the driveway until the lawsuit. *Id.* at 740. On appeal, the trial court's grant of an easement by implication was affirmed.[2] In reaching that conclusion, the appellate court noted several factors that are also present in the instant case:

> In this case, the record indicates that [the plaintiff's] father[] owned the entire tract of land at one time. [The plaintiff] testified that the disputed road has been in existence for 35 years, and that she knew of no other access to her parcel but by way of the drive. The Defendant testified that the road was plainly visible when he purchased his property, and he conceded that the road has been in existence for a long time. Finally, the trial court, in its opinion, noted that the Plaintiffs' parcel is "land-locked", rendering use of the road "reasonably necessary" to the enjoyment of Plaintiffs' land.

*Id.* at 741. Similarly, in the instant case, the Bucks' Tract 4 is landlocked, and the proof at trial established that the old logging road is the only means of access that there has ever been to the property. The road has been in existence for many years, and the Avents knew of its existence and knew it was being used to access Tract 4.

The Avents argue that there are alternate means of accessing Tract 4, other than the old logging road on their property. They claim that, although some of the alternate means of access involve using wet or swampy areas, all of the property at issue is near the river and the claimed easement itself is in wet or swamp land. The Avents point out that the Bucks have admitted that they have obtained access to Tract 1 through passage over another person's property and that, from Tract 1, the Avents would give permission for the Bucks to cross over the north*west* corner of Tract 3 to access Tract 4. A similar argument was made and rejected in *Fowler*. The *Fowler* court reasoned that, using the proposed alternate route, the "Plaintiffs would still be required to cross property which does not belong to them in order to access the nearest public road." *Id*. Moreover, the alternate routes on which the Avents rely would likely be "unreasonable" alternatives, in light of the fact that it would require the Bucks to have, in effect, two easements, or permission from two servient tenements. Under these circumstances, the evidence does not preponderate against the trial court's conclusion that the Bucks' use of the road is reasonably necessary for the enjoyment of their property. Thus, we affirm the trial court's grant of an implied easement.

Finally, the Avents argue that the trial court's decision to appoint Wiles, the Bucks' expert, to set the exact boundary between the properties was an improper abrogation of the trial court's duty

---

[2]The court also granted the plaintiffs an easement by prescription.

to determine contested facts and conclusions of law. The Avents argue that the trial court's ordered remedy was similar to the trial court's decision in ***Blankenship v. Blankenship***, No. 02A01-9603-CH-00051, 1997 WL 15241 (Tenn. Ct. App. Jan. 17, 1997), another boundary dispute. In ***Blankenship***, the appellate court vacated the trial court's adoption of a Special Master's report, because it was apparent that the trial court failed to exercise independent judgment in adopting the report. In ***Blankenship***, before the parties had rested their cases, the trial court *sua sponte* announced that a Special Master would determine where the disputed boundaries lay, because the trial court could not "make heads or tails out of this." After the master's report was submitted, the trial court denied further argument, stating that "if [the master is] wrong, he's just wrong and you have a right to appeal it." ***Id.*** at *2. The Special Master's reported was adopted *in toto*. The appellate court in ***Blankenship*** reversed the trial court's decision, finding that the trial court had failed to exercise independent judgment in adopting the Special Master's report. It remanded the case with instructions to the trial court to consider the matter independently and to permit the parties to offer additional evidence. ***Id.*** The court stated that, "[w]hen the role of the master is to deal with cases that are unusually complicated, the Court is not justified in refusing to hear and consider both parties' relevant, competent evidence on the issue." ***Id.***

In this case, the Avents argue that the trial court's decision suffers from the same infirmity as the decision of the trial court in ***Blankenship***. In the case at bar, the trial court instructed Wiles to survey the property and to "place stakes to show the location of the line." Then the trial court ordered the Avents to restore the Bucks' property in accordance with the lines established by Wiles. We agree with the Avents that the trial court's pre-approval of Wiles' placement of the parties' boundary lines precluded the trial court from making an independent decision on the location of the boundary lines, and foreclosed the parties from having the opportunity to present objections or contrary evidence regarding the exact property line. Therefore, this portion of the trial court's decision must be reversed, and the cause remanded for the trial court to consider objections to Wiles' report, permit the parties to offer additional evidence, and to make an independent decision regarding the boundary lines.

The decision of the trial court is affirmed in part and reversed in part as set forth above, and remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed equally to Appellants James Avent and wife, Bernadine Avent, and Timmy Avent, and their surety, and Appellees David L. Buck and Christopher L. Buck, for which execution may issue, if necessary.

 

 

_____
HOLLY M. KIRBY, JUDGE